**GREGORY NICOLAYSEN (CA 98544)**
**27240 Turnberry Lane, Suite 200**
**Valencia, CA 91355**
**P: (818) 970-7247**
**F: (661) 252-6023**
**E: gregnicolaysen@aol.com**

**Attorneys For Defendant,**
**Alejandro Sandoval**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEJANDRO SANDOVAL,<br><br>    Defendant | ) CR 18 - 774  – JAK - 3<br>)<br>) **NOTICE OF MOTION AND**<br>) **MOTION BY DEFENDANT**<br>) **ALEJANDRO SANDOVAL FOR**<br>) **SUPPRESSION OF EVIDENCE**<br>) **SEIZED ON MARCH 10, 2016 (1)**<br>) **DURING TRAFFIC STOP, AND**<br>) **(2) SUBSEQUENT SEARCH OF**<br>) **APARTMENT; MEMORANDUM**<br>) **OF POINTS AND AUTHORITIES**<br>)<br>) **DATE: October 14, 2021**<br>) **TIME: 8:30 a.m.**<br>) **CTRM: HON. John A. Kronstadt**<br>) |

TO:    THIS HONORABLE COURT AND THE U.S. GOVERNMENT,
       THROUGH ITS COUNSEL OF RECORD, ASSISTANT U.S.
       ATTORNEY SHAWN ANDREWS:

       PLEASE TAKE NOTICE that on October 14, 2021, at 8:30 a.m., before the

1  Honorable John A. Kronstadt, Judge of the United States District Court, defendant

2

3  Alejandro Sandoval will move the Court for an order suppressing all items seized

4  on March 10, 2016 during two separate searches: (1) a search of Sandoval's person

5  and vehicle during a traffic stop conducted at approximately 6:30 p.m.; and (2) a

6

7  search of an apartment conducted later that same evening, located at 1321 1/2 219th

8  street in Torrance.

9          The motion is brought pursuant to this notice of motion, the accompanying

10

11  memorandum of points and authorities, all papers contained in the district court

12  file, and any additional evidence the court permits counsel to introduce at the

13  hearing on the motion.

14

15

16  DATED: September 15, 2021          Respectfully Submitted,

17

18

19                                     _____
                                       /S/

20                                     GREGORY NICOLAYSEN
                                       Counsel for Defendant,

21                                     Alejandro Sandoval

22

23

24

25

26

27

28                                       2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This motion seeks the suppression of all items seized by the Torrance Police Department ("Torrance PD") during two separate searches, both of which were conducted on March 10, 2016.  The Torrance PD reports, attached hereto and discussed in depth in this motion, characterize the officers' actions as probation compliance searches.  Mr. Sandoval respectfully contends that both searches were conducted for investigatory rather than probationary purposes; that both searches lacked reasonable suspicion to justify the officers' actions under the guise of probation compliance searches; and that as to the search of the 219th St apartment which purported to be a probation compliance search of Sandoval's residence, the evidence presented in this motion amply establishes that the location was not his residence.

## II.

## THE COURT SHOULD SUPPRESS THE NARCOTICS AND ITEMS SEIZED FROM MR. SANDOVAL'S PERSON AND VEHICLE ON MARCH 10, 2016. AT THE VERY LEAST, AN EVIDENTIARY HEARING IS REQUIRED

A.    The Search Of Sandoval's Person And Vehicle On March 10, 2016

On March 10, 2016, officers from the Torrance PD conducted a traffic stop of Mr. Sandoval, during which they claim to have seized two packets of narcotics from his person, as well as items during a search of the vehicle.  The following relevant facts taken from police reports attached as exhibits are set forth below:

Without explaining the process or procedure by which it allegedly acquired such knowledge, the Torrance PD claims in one of its reports that on February 17, 2016, officers identified Mr. Sandoval as being on "post release community supervision" probation also known by the acronym "PRCS."  See Exhibit A hereto, which states in pertinent part:[1]

> On 2/17/2016, ALEJANDRO SANDOVAL was identified
> as being on searchable parole/probation – POST
> RELEASE COMMUNITY SUPERVISION (PRCS) –
> under OCA# X00351619 for narcotics.

Mr. Sandoval's PRCS status is also reflected in Exhibit K to this motion, which is a County of Los Angeles Probation Dept appointment form for Mr. Sandoval, showing that he is on Post-Release Community Supervision and has been assigned a probation officer by the name of Yepez.  Attached as Exhibit L is a computer-generated document on Mr. Sandoval (produced in discovery, Bates TPD 001282) that was run by law enforcement on March 11, 2016 (the day after the searches at issue in this motion), showing that Sandoval is on PRCS and his probation officer is Carmen Yepez (phone number listed).

It should be noted that the police report attached as Exhibit A does not assert that the officers who conducted the traffic stop knew Sandoval was on PRCS, only that Sandoval "was identified."  As the case law discussed below makes clear, actual knowledge by the officers that the individual is on probation is a prerequisite

---

[1]    Exhibit A is an excerpt of a 72-page investigative report of the Torrance PD marked as Bates TPD 001258 - 001329.  The excerpt relevant to the traffic stop which is attached hereto as Exhibit is Bates TPD 001258 - 001262.  The excerpt regarding PCRS probation appears on Bates TPD 001259.

4

to a valid probation search.  The use of the past tense in Exhibit A strongly suggests that there is an issue here in regard to whether the officers had proper knowledge.

The report attached as Exhibit A, which bears the name of Detective R. Waldrop as its author, asserts that on March 10, 2016, at approximately 6:30 pm, Detectives Waldrop and O'Rourke, while driving on Western Blvd in Torrance, observed Sandoval's vehicle[2] and "conducted a traffic stop of Sandoval's vehicle in the Walgreens parking lot located on the corner of Western / Sepulveda."[3]

A separate report attached as Exhibit B hereto, quoted below, asserts that the basis for conducting the traffic stop was to determine whether Sandoval was in compliance with PRCS probation.  However, it should be noted that no report makes any mention of the officers having contacted Sandoval's probation officer prior to the March 10 traffic stop.  The events of March 10 appear to have been conducted by the Torrance PD without any coordination with Sandoval's probation officer.

Exhibits A and B also contain factual assertions regarding the seizure of narcotics from Sandoval which are simply untenable and should be addressed at an evidentiary hearing with the officers under oath.  On this subject, Exhibit B asserts that during the traffic stop, a packet containing methamphetamine was seized from Sandoval at the scene of the traffic stop, and another packet recovered from his person at the police department during booking:

> On March 10, 2016, detectives/ officers conducted a
> traffic stop to conduct a PRSC compliance search /

---

[2]    Attached hereto as Exhibit J is a California Highway Patrol report dated March 10, 2016  showing that the subject vehicle was registered to Mr. Sandoval.

[3]    Exhibit A at Bate TPD 001258.

search warrant on the person of Sandoval and his vehicle. The traffic stop was conducted at Sepulveda/ Western in the City of Torrance. Sandoval was the driver and sole occupant. During a search of Sandoval's person, Detective's recovered a large plastic baggy containing a sales quantity of suspected methamphetamine, a large amount of currency and two cell phones. Sandoval was arrested for 11378 HS, 11379 HS and transported to TPD[4] jail. . . . During a subsequent strip search once inside the jail another large amount of suspected methamphetamine was observed fall to the floor from his right armpit area.[5]

Piecing the various reports together, the officers make the completely unsustainable claim that both packets of meth were retrieved from Sandoval's armpits, the second one at the police department as referenced in the quote above, and the first one at the scene of the traffic stop as described below in the excerpt from Exhibit A (Bates TPD 001261):

---

[4]    TPD = Torrance Police Dept.

[5]    The currency that was seized from Mr. Sandoval during the so-called traffic stop was in the amount of $5,245 (See Exhibit A, Bate TPD_001261).  While the officers treated this as narcotics proceeds, Exhibit N hereto directly contradicts this perception in showing that Mr. Sandoval was released from state prison on August 8, 2015 (only seven months prior to March 10, 2016), at which time he was provided by prison officials with the sum of $13,621.86.  The government is hard-pressed to show that the amount seized at the traffic stop was separate and distinct from the funds given to Sandoval upon his release. Thus, the cash seized on March 10 does not corroborate the officers' claim that Sandoval possessed narcotics in his armpits.

**SANDOVAL was gripping the steering wheel and keeping his arms close to his body (which we later determined was because _he had stored two packages of narcotics in each of his armpits_). . . . [Italics and Underlining Added]**

**Upon detaining SANDOVAL, I conducted a cursory search of his person for weapons. During the search, I located an object the size of a fist that was loose in his shirt sleeve (along his left arm). I removed this object and observed it to be a plastic baggy containing a crystalline substance suspected to be methamphetamine (later determined to weigh approx. 2.08 ounces – booked into evidence ITEM# 300).**

**\*      \*      \***

**During the booking process, a strip search of SANDOVAL was conducted inside the jail. During this search an additional package of suspected methamphetamine was discovered being held in SANDOVAL's right arm pit (later determined to weigh approx. 0.96 ounces – booked into evidence ITEM #301).[6]**

**In addition to allegedly seizing the above-referenced narcotics as well as US**

---

**[6]      The DEA report attached as Exhibit F states that the items marked by the Torrance PD as Items 300 and 301 were sent to the DEA lab for analysis and were designated as Exhibits 15 and 16, respectively.**

7

currency, the officers entered Sandoval's vehicle and recovered non-contraband items, specifically mail addressed to Sandoval. (See Exhibit C hereto).[7] These items are also the subject of this suppression motion.

Doubts as to whether the true motive for conducting the so-called traffic stop was to assess PRCS compliance, which are already raised by the absence of any communication with Sandoval's probation officer prior to March 10, 2016, are further heightened by the fact that the stop was preceded by surveillance of Sandoval conducted earlier that day which was maintained continually up to the moment the stop was initiated. On this point, Exhibit A, written in the first person by Det. Waldrop, states as follows (Bates TPD 001260):

> On 3/10/2016 at approx. 1700 hours, DEA Special Agents from GROUP 4 established surveillance at 1321 ½ 219th Street in the City of Torrance. The agents observed MEREJIL and SANDOVAL at the location and activity that appeared to be narcotics related. At approx. 1830 hours agents advised that SANDOVAL was leaving the location in his vehicle (CA/7LTE822). Agents followed SANDOVAL to the area of 223rd STREET/WESTERN where DETECTIVE O'ROURKE and I then observed the vehicle and conducted a traffic stop in order to conduct a search of SANDOVAL pursuant to his probation/parole conditions.

---

[7] Exhibit C is page four (Bates TPD 001333) of a five-page Torrance PD report (Bates TPD 001330-001334).

A DEA report detailing the surveillance (Exhibit D hereto) confirms that the surveillance at the 219th St location was set up at 4:30 p.m. - approx. two hours prior to the traffic stop, and that at approx 6:20 p.m., Sandoval's vehicle is seen which is then followed and stopped by officers.[8]

> 1. At approximately 4:30 p.m., surveillance was established in the vicinity of 1321 1/2 West 219th Street, Torrance, California 90501.[9]

> 9. At approximately 6:21 p.m., SA Diehl observed a black Chevrolet Cruze bearing California license plate #7LTE822 (registered to Alejandro SANDOVAL, 4851 Saturn Street, Los Angeles, California 90019) arrive in the vicinity of 1321 1/2 West 219th Street, parking north-curb side facing westbound.[10]

> 10. At approximately 6:42 p.m., SA Diehl observed the black Chevrolet Cruze drive westbound on West 219th Street. Surveillance units then observed the black Chevy Cruze continue southbound on Halldale Avenue.[11]

> 11. At approximately 6:50 p.m., SA Drew Kalies observed the black Chevrolet Cruze enter the Walgreens parking lot located at 22930 South Western Avenue, Torrance, California 90501. At this time, Torrance Police

---

[8]    The quoted sections from the report are yellow-highlighted in Exhibit D.

[9]    Exhibit D, Bates DEA 000368.

[10]    Exhibit D, Bates DEA 000369.

[11]    Exhibit D, Bates DEA 000370.

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Department Detectives Robert Waldrop #15471 and Sean O'Rourke #19085 conducted a traffic stop of the black Chevrolet Cruze.

Based on the assertions contained in the DEA report (Exhibit D), it is clear that the so-called PRCS compliance traffic stop conducted inside the Walgreens parking lot was in fact a stop conducted at the direction of the surveillance team which failed to comply with the requirements for a probation search and lacked a proper legal basis for a traffic stop.

This conclusion is supported by the actions of the Torrance PD only three days after the traffic stop directly support Sandoval's position seeking suppression. On March 13, 2016, the same Detective Waldrop issued a police department document entitled, "Suspect Detention - Release - Amended Charges" which contains the handwritten statement, "Insufficient for DA to file at this time." (See Exhibit E hereto). Simply put, the Torrance PD knew they had no case from the outset — a key fact that needs to be fleshed out at an evidentiary hearing on this motion.

Indeed, the computer-generated profile on Sandoval attachedf as Exhibit L hereto contains a statement, "DO NOT ARREST OR DETAIN BASED SOLELY ON THIS RESPONSE," which would support the defense contention that law enforcement was not entitled to conduct the traffic stop / detention / search solely on the basis of PRCS status. The decision not to pursue prosecution referenced in Exhibit E is consistent with the admonition in Exhibit L not to arrest or detain solely on the basis of PRCS.

The officers' decision not to pursue prosecution is particularly noteworthy when viewed in conjunction with the absence of any enforcement action taken by

10

the Probation Office against Mr. Sandoval for either the narcotics allegedly seized at the so-called traffic stop, or the narcotics seized during the search of the 219th St. apartment.  Attached hereto as Exhibit M is a Probation Office form issued by Probation Officer Kenley Williams which notified Mr. Sandoval of the termination of his PRCS without any violations within the preceding one year period, which encompasses the events of March 10, 2016.

In short, Exhibit M tells us that the Probation Office took no action against Mr. Sandoval for anything that happened on March 10, 2016: his arrest for allegedly possessing narcotics, or the subsequent search of the 219th St apartment. How can this possibly be?  One plausible explanation is that the Probation Office concluded that the officers' actions in conducting so-called probation compliance searches were illegal and elected to take no action against Mr. Sandoval.

Certainly, the legality of the officers' actions on March 10 are questionable in light of the absence of prosecution by the DA and the absence of any enforcement action by the Probation Office.

Taking such concerns to an even higher level is the forensic evidence presented in this motion regarding the two packets of methamphetamine allegedly seized at the traffic stop.  Forensic findings obtained by the defense reveal disturbing facts suggestive of outright police misconduct.  As discussed herein, defense investigator Marvina Strong conducted an inspection of the two packets of methamphetamine allegedly retrieved from Sandoval's armpits and concluded that it was highly unlikely that jagged pieces of methamphetamine in plastic baggies that lacked any adhesive tape could have been secreted in the armpits as claimed by the officers.[12]  A subsequent DNA test of the packets determined that while DNA of unknown individuals does exist on the packets, there is no DNA of Sandoval on

---

[12]    See attached Declaration of Marvina Strong, at pars. 9, 14 - 16.

either packet – an astonishing revelation that undercuts the credibility of the police.

Judged by the standards discussed below, this Court should find that the stop, search and seizure of items from Mr. Sandoval and his vehicle were all unlawful and that the seized items should therefore be suppressed.

**B.    General Standards Of PRCS Searches**

At the time the traffic stop was conducted on March 10, 2016, Mr. Sandoval was under PRCS, a type of post-release supervision which is explained by the California Court of Appeal in People v. Douglas, 240 Cal. App. 4th 855, 863-64, 193 Cal. Rptr. 3d 79, 87-88 (2015):

> "The Postrelease Community Supervision Act of 2011, adopted as part of the 2011 realignment legislation addressing public safety (Realignment Act), provides for local post-incarceration supervision of less serious offenders released from state prison, transferring their supervision from state parole authorities. (Penal Code § 3450 et seq., added by Stats. 2011, ch. 15, § 479.) Thus, among other things, the Realignment Act provides that a defendant sentenced to state prison is "subject to a mandatory period of supervision following release, either parole supervision by the state (§ 3000 et seq.), or postrelease community supervision by a county probation department. (§ 3450 et seq.)" [citation omitted]. The most serious offenders are not eligible for PRCS, such as those who have committed serious or violent felonies (§§ 667.5,

12

subd. (c), 1192.7, subd. (c)) and high risk sex offenders.
[citation omitted].) A PRCS search condition, like a
parole search condition, is imposed on all individuals
subject to PRCS. (§3465.)

    The Court in <u>Douglas</u> further explained the standard for conducting a search
and detention of an individual who is under PRCS:

Viewing PRCS in the context of its statutory genesis in
the Realignment Act and the broader legal landscape
governing parole and probation in which it fits, we
conclude that an individual who has been released from
custody under PRCS is subject to search (and detention
incident thereto) so long as the officer knows the
individual is on PRCS. PRCS, like parole, involves the
post-incarceration supervision of individuals whose
crimes were serious enough to result in a prison sentence
and thereby implicates important public safety concerns,
as well as the state's """"overwhelming"""" interest in
supervising released inmates. [citing <u>Samson v.
California</u>, 547 U.S. 843, 853 (2006)]. It is not necessary
for the officer to recite or for the People to prove the
precise terms of release, for the search condition is
imposed by law, not by consent. As in the case of a parole
search, an officer's knowledge that the individual is on
PRCS is equivalent to knowledge that he or she is subject
to a search condition. [citation omitted].

13

**Douglas**, *supra*, 240 Cal. App. 4th at 865.

In regard to "the quantum and character of information that an officer must have to justifiably detain and search a person as a PRCS releasee," 240 Cal. App. 4th at 865, the <u>Douglas</u> court, treating this as an issue of first impression in California, promulgated an objectively reasonable belief test:

> We further conclude the formulation most faithful to the analogous precedents is the "objectively reasonable belief" standard: the officer's belief in the subject's status as a probationer, parolee or person subject to PRCS must have been objectively reasonable in the totality of the circumstances. In practical application, that standard—as regulated in the courtroom by the rules of evidence—is enough to put the People to their proof, without imposing an unduly rigid formula for how the standard must be met.

**Douglas**, 240 Cal. App. 4th at 865.

In <u>Douglas</u>, the defendant, who was under PRCS at the time he was subjected to a detention and search, filed a motion to suppress. Applying the standards quoted above, the Court framed the central issue governing the suppression analysis as follows:

> Adapting an objectively reasonable belief standard to the present context, the question becomes whether, judged against an objective standard, the facts available to Detective Bailey at the moment he detained Douglas would have warranted an officer of reasonable caution to believe Douglas was on PRCS. Or to put it most

simply—Was Bailey's stated belief that Douglas was on

PRCS objectively reasonable?

<u>Id</u>., 240 Cal. App. 4th at 868.

By analogy, the issue before this Court can be framed as follows: Whether, judged against an objective standard, the facts available to the Torrance PD officers at the moment they detained Sandoval on March 10, 2016 would have warranted an officer of reasonable caution to believe Sandoval was on PRCS.

C.   <u>The Police Reports Fail To Show That The Torrance PD Officers Had An
     Objectively Reasonable Belief That Mr. Sandoval Was On PRCS When They
     Detained Him</u>

As discussed above, Exhibit E hereto confirms that the Torrance PD knew they had no case against Mr. Sandoval and thus declined to pursue any criminal charges with the DA's office.  The decision not to pursue any criminal charges against Sandoval for what the reports claim was the possession of two packets of methamphetamine in his armpits, speaks volumes to the Torrance PD's awareness that the March 10, 2016 traffic stop was legally flawed.

The flaw may very well lie in the simple fact that the Torrance PD officers who conducted the stop did not have knowledge at the time that Sandoval was on PRCS, which would explain the ambiguous and misleading statement in Exhibit A that "On 2/17/2016, ALEJANDRO SANDOVAL was identified as being on [PRCS]" – an assertion that fails to establish whether the officers conducting the traffic stop on March 10 had the requisite knowledge to effectuate a valid PRCS detention / search.  An evidentiary hearing is needed to address this critical prerequisite, for which the officers would need to testify under oath.

**D.**     **The Officers' Claim That They Conducted The Traffic Stop For The Purpose Of Probation Compliance Was Nothing More Than A Pretext To Conduct A Warrantless Search of Sandoval And His Vehicle, Which Fails To Comply With The Whren Doctrine**

In **Whren v. United States**, **517 U.S. 806, 116 S. Ct. 1769 (1996)**, the Supreme Court "held that a traffic violation was sufficient to justify an investigatory stop, regardless of whether (i) the violation was merely pretextual, (ii) the stop departed from the regular practice of a particular precinct, or (iii) the violation was common and insignificant." **United States v. Choudhry**, **461 F.3d 1097, 1102 (9th Cir. 2006)** (citing **Whren**, **517 U.S. at 811-12, 814-15, 818-19**).

Here, the Torrance PD officers approached and detained Sandoval when his car was stationery inside a parking lot:

> Subsequently, we conducted a traffic stop of SANDOVAL's vehicle in the WALGREENS parking lot located on the N/E corner of WESTERN/SEPULVEDA.[13]

> 11. At approximately 6:50 p.m., SA Drew Kalies observed the black Chevrolet Cruze enter the Walgreens parking lot located at 22930 South Western Avenue, Torrance, California 90501. At this time, Torrance Police Department Detectives Robert Waldrop #15471 and Sean O' Rourke #19085 conducted a traffic stop of the black

---

[13]     Exhibit A, Bates TPD 001258.

16

Chevrolet Cruze.[14]

As the reports make clear, the so-called traffic stop did not involve pulling Sandoval's vehicle over to the side of the road for a traffic violation. Sandoval was already parked inside the Walgreens parking lot. Thus, while the police still use the term "traffic stop," the fact that Sandoval was stationary and thus did not commit a traffic violation is significant because it takes this incident outside the context of Whren, which authorizes pretextual traffic stops so long as a valid traffic violation has occurred. As no such violation occurred here, Whren does not apply and the pretextual nature of the stop therefore bears significance.

The objective of the Torrance PD was clear: to detain and search Sandoval and his vehicle. As they had no reasonable suspicion of criminal activity to justify a warrantless search of his vehicle (the reports make no mention of such); and because Sandoval was already parked and thus not in a position to commit a traffic violation by which they could conduct a traffic stop and search under Whren, the officers needed a justification. On this point, the reports unambiguously assert that the so-called traffic stop was conducted to determine probation compliance:

> Agents followed SANDOVAL to the area of 223rd
> STREET/WESTERN where DETECTIVE O'ROURKE and I
> [Det. Waldrop] then observed the vehicle and conducted a
> traffic stop in order to conduct a search of SANDOVAL
> pursuant to his probation/parole conditions.[15]

---

[14]    Exhibit D, Bates DEA 000370.

[15]    Exhibit A, Bates TPD 001260.

17

> On March 10, 2016, detectives/ officers conducted a traffic stop to conduct a PRSC compliance search/ search warrant on the person of Sandoval and his vehicle.[16]

The probation compliance rationale to justify the traffic stop is an unjustifiable pretext. Clearly, the officers had no interest in probation compliance. It is nothing more than a ruse to search Sandoval and his vehicle and have an after-the-fact rationale to insert in a police report as justification for their actions.

Suspicionless searches are lawful in California for both probationers and parolees, so long as they are not conducted arbitrarily, capriciously, or for harassment. **People v. Bravo**, 43 Cal.3d 600, 610, 238 Cal. Rptr. 282 (1987) [probationers]; **People v. Reyes**, 19 Cal. 4th 743, 752, 80 Cal. Rptr. 2d 734 (1998) [parolees].) The United States Supreme Court has approved this rule in the case of parole searches [**Samson v. California**, 547 U.S. 843, 856–857 (2006)], but has not yet addressed it in the case of probation searches [Erwin et al., Cal. Criminal Defense Practice (2015) § 22.08[2][a] & [b], pp. 22-96, 22-99 (rel. 71-6/2013)].

In **Bravo**, *supra*, 43 Cal.3d at 608, 610, the California Supreme Court held that probation searches may be conducted without suspicion. *See also*, **People v. Medina**, 158 Cal.App.4th 1571, 1576–1577 & fn. 2, 70 Cal. Rptr. 3d 413 (2007); **U.S. v. King**, 736 F.3d 805, 807–810 (9th Cir. 2013). In so holding, the Court observed that a probation search may not be conducted "for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes," nor may the search be arbitrary, capricious or harassing. **Bravo**, 43 Cal.3d at 610. *See also*, **People v. Hoeninghaus**, 120 Cal. App. 4th 1180, 1188, 16 Cal. Rptr. 3d 258, 262 (2004) ("searches that are undertaken pursuant to a

---

[16]    Exhibit B, Bates TPD 001344.

18

1    probationer's advance consent must be reasonably related to the purposes of

2    probation.").

3        Here, the actions taken by the Torrance PD were entirely unrelated to

4    rehabilitative and reformative purposes of probation and fall squarely within the

5    category of arbitrary, capricious and harassing.  The officers were looking for a

6    pretext to arrest his vehicle and search his vehicle.  The notion of a probation

7    compliance search was nothing more than window dressing.

8        Referring once again to Exhibit E, which establishes that the Torrance PD

9    did not seek to pursue prosecution against Sandoval due to "insufficient for DA to

10   file at this time," the inescapable conclusion for this Court to draw is that the

11   Torrance PD knew their actions were legally defective.

12

13   **E.    The Officers' Credibility Is Seriously Undermined By the Lack Of Any DNA**

14   **       from Mr. Sandoval On Either Of The Two Packets Of Narcotics Allegedly**

15   **       Retrieved From His Armpits**

16       This is a case that presents significant credibility problems for the Torrance

17   PD officers who conducted the detention / search of Sandoval and his vehicle on

18   March 10, 2016.  The attached declaration of CJA-appointed investigator Marvina

19   Strong, who has a substantial background in law enforcement and as an

20   investigator on numerous CJA cases, and CJA-appointed DNA expert Theron L.

21   Vines III, taken together, raise critical questions regarding the integrity of the

22   Torrance PD reports in regard to their claim that Mr. Sandoval possessed two

23   baggies of methamphetamine in his armpits.

24       Ms. Strong's declaration describes her on-site inspection of the baggies and

25   methamphetamine at the DEA Southwest laboratory in Vista, CA, during which

26   she took measurements of the baggies and observed key features such as the

27

28                                         19

1   unusual size of the baggies for purposes of being placed in an armpit; the lack of

2   any tape or adhesive to affix the baggies to Sandoval's skin; and the crystal

3   character of the meth which would have made it exceedingly uncomfortable to

4   place under one's armpit.[17]

5       Ms. Strong also noted the unusual police practices whereby the officers failed

6   to retrieve both baggies at the scene of the traffic stop despite claiming in reports

7   that they searched Sandoval, and the reports assert that the second baggie was not

8   retrieved until Sandoval was searched at the Torrance PD jail – a claim that defies

9   any logic as Sandoval had been taken out of his vehicle and placed face down on the

10  ground and handcuffed behind his back.  Ms. Strong further noted that the officers

11  failed to take individual photos of the baggies at the scene which would be a

12  customary practice for preserving future evidence; indeed, the officers took an

13  individual photo of currency seized from Mr. Sandoval which contradicts their

14  failure to take photos of the baggies.[18]

15      Based on these concerns, which are detailed in her declaration, Ms. Strong

16  recommended to CJA counsel that the baggies be subjected to a DNA test to see if

17  Sandoval's DNA was present.

18      The CJA office approved the appointment of DNA expert Theron Vines III,

19  who took a DNA sample from Mr. Sandoval and coordinated with the government

20  to have access to the baggies.  As explained in his attached declaration and reports,

21  Mr. Vines' examination determined that DNA of one or more unknown individuals

22  was present on the baggies, but also concluded that Sandoval's DNA was not

23  present.  Mr. Vines conducted a follow-up DNA test in August 2021 using updated

24

25  _____

26      [17]    Declaration of Marvina Strong, at pars. 5 - 8.

27      [18]    Declaration of Marvina Strong, at pars. 9, 14 - 16.

28

software, which confirmed the presence of DNA of unknown individuals and ruled out the presence of Sandoval's DNA.

The absence of Sandoval's DNA on the baggies is particularly noteworthy given that the officers claim that Sandoval had secreted the baggies in his armpits, an area of the body that sweats and thus generates an abundance of DNA. Indeed, Exhibit A asserts that when confronted by the officers at the outset of the traffic stop, Sandoval was breathing heavily, which would certainly go hand in hand with the production of sweat, which in turn would generate DNA on the baggies – if in fact they were in his armpits as the officers claim:

> Upon making contact with SANDOVAL, I observed that he appeared extremely nervous (excessive respiration) and was tightly gripping the steering wheel.   [Exhibit A, Bates TPD 001260].

Particularly when viewed in conjunction with Exhibit E hereto, which is the Torrance PD document by which the officers declined to pursue any charges against Sandoval through the DA's office, the declarations of Strong and Vines raise credibility issues that warrant an evidentiary hearing on this motion.

In its totality, this motion makes a prima facie showing that the Torrance PD officers wanted to arrest Sandoval and search his vehicle and resorted to improper tactics to achieve this end: it began with the officers exploiting Sandoval's PRCS status as a pretext for conducting the traffic stop to detain and search him, which in turn allowed the officers to develop the contrived claim that Sandoval had baggies of methamphetamine secreted in his armpits. The contrived possession of narcotics, in turn, provided a pretext of reasonable suspicion to search the vehicle.

The vehicle search, in turn, yielded a piece of mail which the officers seized and used later that same evening as the basis for conducting what they claimed to be a probation search of an apartment located at 1321½ 219th street in Torrance.

**F.**    **The Evidence To Suppress Includes A Piece Of Mail Seized From Sandoval's Vehicle That Served As The Pretext For The Officers To Conduct A Search Of An Apartment Later That Evening**

During the search of Sandoval's vehicle, the officers seized a piece of mail addressed to Sandoval at an apartment located at 1321 1/2 219th street in Torrance (the "219th St apartment").  Law enforcement would use this letter as justification later that same evening to conduct yet another so-called probation search, this time at the 219th St apartment.  In this regard, Exhibit C states:

> There was also recent mail in the vehicle addressed to SANDOVAL that indicated his current address is 1321 1/2 219th street in Torrance. ***Based on the evidence found in the vehicle***, at approx. 2200 hours we conducted a probation search at 1321 1/2 219th street and recovered a large amount of additional suspected methamphetamine and evidence of narcotics sales. [Italics and Underlining Added]

Even if, *arguendo*, this Court does not suppress the narcotics that the officers claim they seized from Sandoval's armpits, the Court should suppress the mail seized from the vehicle.  As discussed above, the Torrance PD ostensibly conducted a probation *compliance* traffic stop / search.

A search of the vehicle resulting in the seizure of mail clearly exceeds the

purpose and scope of a probation compliance search. As such, the mail should be suppressed by this Court.

The officers' awareness of the unlawful seizure of the mail from the vehicle appears to be reflected in Exhibit C, the Torrance PD document containing the decision not to refer Sandoval to the DA for prosecution based on the traffic stop. By seizing that piece of mail which gave them a pretext to search the apartment later that evening, the officers had obtained what they wanted from the traffic stop; and knowing that they had manipulated probation compliance standards and narcotics evidence in the ways addressed in this motion, they knew better than to pursue a prosecution against Sandoval. But now that they had the piece of mail that was addressed to Sandoval at the 219th Street apartment, they felt that they could proceed with another probation compliance search later that evening.

This Court should not tolerate the gamesmanship in the officers' actions. The narcotics, mail and other items seized from Sandoval's person and vehicle should be suppressed. At the very least, an evidentiary hearing granted.

Mr. Sandoval's request for suppression, or alternatively an evidentiary hearing, in regard to the items seized from the search of the 219th St apartment is addressed in the following section of this motion.


### III.
### THIS COURT SHOULD SUPPRESS THE ITEMS SEIZED
### FROM THE SEARCH OF THE 219th ST. APARTMENT.
### AT THE VERY LEAST, AN EVIDENTIARY HEARING IS REQUIRED

A.    Introduction

While the U.S. Supreme Court has expressly acknowledged the validity of

residential searches of probationers conducted by probation officers [Griffin v. Wisconsin, 483 U.S. 868, 883, 107 S. Ct. 3164, 3173 (1987) ("In order to ensure compliance with those conditions, a probation agent may need to search a probationer's home to check for violations.")], the search at issue was not conducted by the probation officer; and the failure by the Torrance PD to coordinate in any way with Sandoval's probation officer underscores the questionable legality of the officers' actions in regard to the search of the 219th St apartment.

As referenced in the quote above from Exhibit C, within hours following the traffic stop, and armed with the piece of mail seized from Sandoval's vehicle at the traffic stop, the officers proceeded to conduct a warrantless search of the 219th St apartment, ostensibly on the ground that it was a probation search of Sandoval's residence. As no one was at the apartment when the officers arrived, they broke the door and made a forced entry. The broken door frame is depicted in Exhibit O hereto.

The following excerpts from police reports attached as exhibits are relevant:

Subsequently,[19] I [Detective Waldrop] responded to 1321 ½ WEST 219TH STREET to conduct a compliance search pursuant to SANDOVAL's condition of release. I was assisted in the search of the premises by the following detectives and agents: [list omitted] . . . Detectives CONCANNON, CID, CHAVEZ, KRUMBACH, and

---

[19]      The term, "Subsequently," refers to subsequent to the traffic stop which is discussed in the prior paragraphs of Exhibit A, several of which are quoted in earlier parts of this motion.

1
2
3
4
5
6
7

> **FUJIMOTO approached the front of the location and knocked several times. Detectives identified themselves and demanded entry for the search of the location. After no response was received from inside, _detectives forced entry to the residence_ and secured the interior.  [Exhibit A, Bates TPD 001263]. [Italics and Underlining Added]**

8
9
10
11
12
13
14

> **On March 10, 2016, Detectives of the Torrance Police Department ("TPD") conducted an parolee search operation targeting state parolee Alejandro SANDOVAL. The operation involved the search of SANDOVAL's residence at 1321 1/2 West 219th Street, Torrance, California.   [Exhibit G, Bates DEA 000476].**

15
16
17
18
19
20

As the excerpts quoted above make clear, the search of the 219th St. apartment was conducted on March 10, 2016 "subsequently" to the traffic stop; it was a warrantless search carried out under the auspices of a "compliance search" and a "parolee search operation," based on the premise that the location was Sandoval's residence – an assumption based on the item of mail seized from Sandoval's vehicle during the traffic stop.

21
22
23
24
25
26
27

Particularly problematical is the _forced entry_ made by the officers, whereby they broke in the door when no one was there.  This was done entirely on the basis of the mail found in the vehicle hours earlier, as if a single piece were sufficient to establish residency, which it is not.  *Cf.*, People v. Downey, 198 Cal. App. 4th 652, 655-657, 130 Cal. Rptr. 3d 402, 404–406 (2011) [suppression motion of probation search involving forced entry of residence properly denied where landlord testified

28

that defendant had lived at residence and signed lease the same month as the search, and the phone and utility bills for that address were in defendant's name).

The arbitrary nature of the apartment search is highlighted by the officers' failure (if not outright refusal) to coordinate with Sandoval's probation officer. The police reports fail to make any mention of having any communication with Sandoval's probation officer in advance of the search.

These circumstances fail to satisfy the requirements for a probation compliance search of a residence. California courts have concluded that even if there is a search condition to probation, there must still be conduct "reasonably suggestive of criminal activity to 'trigger' the search" in those cases where the probationer had consented only generally to probation searches or to warrantless probation searches, but had made no express waiver of all reasonableness under the Fourth Amendment. *See,* <u>People v. Guerrero</u>, 85 Cal.App.3d 572, 581, 149 Cal.Rptr. 555 (1978); <u>People v. Garcia</u>, 44 Cal.App.3d 1029, 119 Cal.Rptr. 128 (1975). In the case at bar, Mr. Sandoval did not expressly consent to probation searches without a search warrant and without any reasonable cause. Accordingly, this Court should suppress all evidence seized during the search of the 219th St apartment and, at the very least, set an evidentiary hearing.

**B.** <u>**The Officers Lacked Reasonable Suspicion To Conduct A Probation Search Of The 219th St Apartment And Their Actions Were For Investigatory Rather Than Probationary Purposes**</u>

The U.S. Supreme Court has expressly held that a warrantless search of the home of a probationer subject to a search condition is reasonable as to the probationer if there is reasonable suspicion that criminal conduct is occurring.

**United States v. Knights**, 534 U.S. 112, 121, 122 S. Ct. 587, 592 (2001) ("We hold that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house."), cited in **Smith v. City of Santa Clara**, 876 F.3d 987, 990, 992-993 (9th Cir. 2017).

The Torrance PD reports fail to set forth any factual basis for making a finding of reasonable suspicion and thus fail to satisfy the standard articulated in **Knights**.  As quoted earlier in this motion, the reports speak only in conclusory language, claiming that the officers conducted a probation compliance search of the apartment.  Particularly lacking in the reports are any facts showing that the 219th St apartment was Sandoval's residence, which it clearly was not, as shown by the evidence in this motion.  Under these circumstances, the search cannot be justified under **Knights** and must be deemed invalid.

The Ninth Circuit has recognized that in the absence of reasonable suspicion (or probable cause), the underlying purpose of the warrantless search becomes relevant.  On this point, the following analysis in **Cruz v. Barr**, 926 F.3d 1128 (9th Cir. 2019), which cites Supreme Court precedent, is instructive:

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he general rule," confirmed by "centuries of precedent," is "that Fourth Amendment seizures are 'reasonable' only if based on probable cause." **Dunaway v. New York**, 442 U.S. 200, 213-14, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979).
>
> Conversely, if a seizure is supported by probable cause,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

> "[t]hat action [is] reasonable 'whatever the subjective
> intent' motivating the relevant officials." Ashcroft v.
> al-Kidd, 563 U.S. 731, 736, 131 S. Ct. 2074, 179 L. Ed. 2d
> 1149 (2011) (quoting Whren v. United States, 517 U.S.
> 806, 814, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)). In
> other words, "[s]ubjective intentions play no role in
> ordinary, probable-cause Fourth Amendment analysis."
> Whren, 517 U.S. at 813. But—and this point is the critical
> one for present purposes— "purpose is often relevant
> when suspicionless intrusions pursuant to a general
> scheme are at issue." City of Indianapolis v. Edmond, 531
> U.S. 32, 47, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000)
> (emphasis added). In those circumstances, unlike where
> probable cause or reasonable suspicion exists, "'actual
> motivations' do matter.'" al-Kidd, 563 U.S. at 736
> (emphasis added) (quoting United States v. Knights, 534
> U.S. 112, 122, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001));
> see also Whren, 517 U.S. at 811.

20
21
22
23

Barr, 926 F.3d at 1138-39.  On this analysis, the Court emphasized that "[a] focus
on purpose where there is no probable cause or reasonable suspicion for the search
or seizure effectuates the original meaning of the Fourth Amendment."  Barr, 926
F.3d at 1140.

24
25
26
27

    Applying these standards to the facts before this Court, it is inescapable that
the officers' actions were undertaken for investigatory rather than probationary
purposes.  Failing to consult with Sandoval's probation officer, or seek to review

28

probation records such as those attached as exhibits to this motion, was not a mere oversight on the part of the Torrance PD.  Such inaction confirms the intent of the officers to manipulate the doctrine of probation compliance as a facade to conceal their underlying purpose of investigating the apartment.  Such deceptive practices by police officers should never be tolerated by the Court.  The only remedy is an order suppressing all items seized from the 219th St apartment in connection with the government's case against Sandoval.

C.    **PRCS Conditions Do Not Authorize A Warrantless Search Of The 219 Street Apartment**

1.    **Exhibits H and I: The PCRS Conditions Do Not Authorize A Search Of The 219th Street Apartment Because It Was Not Sandoval's Residence**

Mr. Sandoval's PRCS conditions are attached hereto as Exhibit H, which shows on page one Mr. Sandoval's assigned supervision number 351619, together with a "Search/Seizure" condition.[20]

Attached hereto as Exhibit I is Los Angeles County Probation Department Residence Verification form, which identifies Mr. Sandoval by the number 351619 which is listed on page one of Exhibit H.

Exhibit I expressly sets forth the following address as Sandoval's residence while on probation: "Guest House" at 4851 Saturn Street, Los Angeles 90019 (the "Saturn Street residence").  The form is signed by Antonio Diaz, Mr. Sandoval's

---

[20]    Exhibit H contains yellow highlighting of relevant information inserted by defense counsel.

1  uncle,[21] who attests to the following by signing the form:

2

3          Alejandro Sandoval is currently residing at my residence

4          and will continue to reside here for the immediate near

5          future (OR) will be allowed to reside at my residence

6          pending approval by the Government agency that has

7          jurisdiction of the area where my residence is located.

8

9      Moreover, Exhibit I contains a standard search condition by which Mr. Diaz

10  acknowledges that due to Sandoval being on probation, the residence is subject to

11  search:

12          I am aware that Alejandro Sandoval is subject to

13          "Search&Seizure" and that my residence may be

14          searched (at any hour of the day or night) by any

15          probation officer or peace officer, with or without a

16          warrant.

17

18      Viewing Exhibits H and I together, it is clear that Mr. Sandoval's PCRS

19  Search/Seizure condition subjected him to warrantless searches of his residence;

20  but it is equally clear that the condition was specific to the Saturn Street residence.

21  Accordingly, the piece of mail seized from Sandoval's vehicle during the traffic stop

22  which was addressed to Sandoval at the 219th Street apartment did not establish

23  that the 219th Street apartment was Sandoval's residence to justify a warrantless

24

25

26  _____

27          [21]    Declaration of Alejandro Sandoval, at par. 4.

28                                          30

residential search pursuant to the PRCS conditions.[22]

### 2.    PRCS Conditions Did Not Authorize A Forced Entry Into The Apartment

For this reason alone, the Court should conclude that the warrantless search of the 219th Street apartment, *which included forced entry*, cannot be sustained under the theory of a probation compliance search in regard to Mr. Sandoval.

The bottom line is that the Torrance PD busted open the front door of an apartment belonging to someone else. They did so without a warrant and without having in any way consulted with Sandoval's probation officer to determine whether this apartment was his residence. This is egregious misconduct.

### 3.    The Officers Were On Notice In Advance Of March 10, 2016 That The 219th St Apartment Was Not Sandoval's Residence

What makes the officers' actions particularly egregious is the fact that the police were already aware on March 10, 2016 that the 219th Street apartment was not Sandoval's residence and that he resided at the Saturn Street residence. The DEA report attached hereto as Exhibit D, at Bates DEA 000369, states the following in describing the events of March 10:

---

[22]    As no one was present at the 219th St apartment when the officers arrived, the officers' entry cannot be justified as a consent search. <u>Cf.</u>, <u>People v. Woods</u>, 21 Cal. 4th 668, 675, 88 Cal. Rptr. 2d 88, 93 (1999) [In the context of probation searches of residences, Court observed that "(i)t long has been settled that a consent-based search is valid when consent is given by one person with common or superior authority over the area to be searched; the consent of other interested parties is unnecessary."].

1

2      **9. At approximately 6:21 p.m., SA Diehl observed a black**

3      **Chevrolet Cruze bearing California license plate**

4      **#7LTE822 (_registered to Alejandro SANDOVAL, 4851_**

5      **_Saturn Street, Los Angeles, California 90019_) arrive in the**

6      **vicinity of 1321 1/2 West 219th Street, parking**

7      **north-curb side facing westbound. [Italics and**

8      **Underlining Added]**

9

10     Moreover, Exhibit J hereto is a vehicle report dated March 10, 2016 – the

11     same day as the apartment search – that lists Sandoval's address as the Saturn

12     Street residence.  Thus, the Torrance PD had actual knowledge of the Saturn Street

13     residence.

14          The failure of the Torrance PD officers to consult or coordinate with

15     Sandoval's probation officer, Carmen Yepez, in advance of the actions taken on

16     March 10 further illustrates the flagrant nature of the violation.  As explained in

17     the accompanying declaration of CJA investigator Marvina Strong, who spoke with

18     Ms. Yepez, the 219th St apartment was not registered with the Probation office as

19     an address for Sandoval; and the Torrance PD never contacted her in regard to

20     Sandoval.[23]  Ms. Yepez confirmed that Mr. Sandoval's residence on file was the

21     Saturn St. address.[24]

22          Thus, the officers clearly acted with a cavalier disregard, if not outright

23     defiance, of the search conditions in Sandoval's PRCS status, which limited

24     searches to his residence at the Saturn St location.  The law is clear that officers

25     _____

26     [23]     Declaration of Marvina Strong, at par. 19.

27     [24]     Declaration of Marvina Strong, at par. 20.

28

1    conducting a warrantless probation search are required to have advance knowledge

2    of search conditions.  As explained by the California Court of Appeals in People v.

3    Romeo, 240 Cal. App. 4th 931, 939-40, 193 Cal. Rptr. 3d 96, 104 (2015), knowledge

4    of a search condition to probation is a prerequisite for a valid probation search:

5              Because the terms of probation define the allowable scope

6              of the search [People v. Bravo (1987) 43 Cal. 3d 600, 608,

7              238 Cal. Rptr. 282, 738 P.2d 336], a searching officer

8              must have "advance knowledge of the search condition"

9              before conducting a search (In re Jaime P. (2006) 40

10             Cal.4th 128, 132 [51 Cal. Rptr. 3d 430, 146 P.3d 965]

11             (Jaime P.); accord, People v. Durant (2012) 205

12             Cal.App.4th 57, 64 [140 Cal. Rptr. 3d 103] ["a police

13             officer who relies on a probation condition to justify an

14             otherwise illegal search or seizure must know of that

15             condition when he acts ..."]; [People v. Medina (2007)

16             158 Cal.App.4th 1571, 1577, 70 Cal. Rptr. 3d 413] [search

17             must be conducted "pursuant to a known probation

18             search condition"]; Myers v. Superior Court (2004) 124

19             Cal.App.4th 1247, 1252 [22 Cal. Rptr. 3d 369] ["officer

20             must know the person is on probation at the time of the

21             search"]). Without such advance knowledge, the search

22             cannot be justified as a proper probation search, for the

23             officer does not act pursuant to the search condition.

24             (People v. Sanders (2003) 31 Cal.4th 318, 333 [2 Cal.

25             Rptr. 3d 630, 73 P.3d 496] (Sanders) [parole search];

26             People v. Middleton (2005) 131 Cal.App.4th 732, 738 [31

27             Cal. Rptr. 3d 813] [same].) As the Supreme Court has

28

held, "a search founded on neither reasonable suspicion of criminal activity nor advance knowledge of a probation search condition can aptly be characterized as arbitrary." (Jaime P., *supra*, 40 Cal.4th at p. 138; see People v. Hoeninghaus (2004) 120 Cal.App.4th 1180, 1188 [16 Cal. Rptr. 3d 258].

Here, the officers clearly failed to apprise themselves of the PRCS conditions prior to the search of the 219th Street apartment, or they didn't care and were expecting to get away with it. Either way, the search did not qualify as a probation compliance search and is therefore unconstitutional, warranting suppression of all physical evidence seized from the apartment that the government seeks to introduce at trial against Mr. Sandoval.

As the advance consent in the conditions of probation to conduct a residential search did not apply to a non-residence such as the 219th St address, it follows that Sandoval did not give advance consent to search that location. The law is clear that advance consent goes hand in hand with the conditions of probation; thus where advance consent was not given to search the 219th St address, the officers could not conduct a search of that location under the rubric of a probation condition search. Thus, the Torrance PD cannot justify the search by contending that they were aware of advance consent as a probation condition to search the 219th St location. The officers simply took matters into their own hands and kicked in the door, without any advance knowledge of any probation condition authorizing them to search the apartment.

Such action is a flagrant violation of the probation search standards. As explained in Hoeninghaus, *supra*, 120 Cal. App. 4th at 1194-95, 16 Cal. Rptr. 3d at 267-68:

1   . . . we note that [People v. Mason, 5 Cal. 3d 759, 97 Cal.

2   Rptr. 302 (1971)] and Bravo do not suggest that a

3   probation search condition and the probationer's

4   advance consent represent different and independent

5   exceptions to the warrant requirement. Rather, a

6   probation condition implicates only the consent

7   exception. Indeed, as Bravo explains, *a probation*

8   *condition is the written manifestation of the probationer's*

9   *consent, and it both defines the scope of consent and sets*

10  *the parameters of a proper consent search*. In essence,

11  therefore, a *probation search condition and the concept of*

12  *advance consent are interchangeable labels for the same*

13  *thing*. It follows, therefore, that knowledge of a condition

14  is knowledge of consent—i.e., when police search with

15  knowledge of a condition, they are conducting a search

16  with the probationer's advance consent. Conversely,

17  however, when police are unaware of the condition, they

18  cannot know that a probationer has given advance

19  consent and therefore cannot claim to be conducting a

20  probation or consent search. Thus, a  warrantless search

21  of a probationer cannot be upheld under the consent

22  exception if police are unaware that the probationer gave

23  advance consent to the search.  Our analysis simply

24  follows the logic and governing rule, explained in [People

25  v. Sanders, 31 Cal. 4th 318, 2 Cal. Rptr. 3d 630 (2003)]

26  that the reasonableness of a warrantless search must be

27  determined from what police know at the time of the

28

35

1    search. [Italics and Underlining Added].

2

3         In this case, the officers did not have knowledge of a condition to search the

4    219th Street apartment as a condition of probation.  The residential search condition

5    was specific to the Saturn Street location.  It follows that in executing forced entry

6    into the apartment, the officers were not acting with knowledge of a condition to

7    search that location and thus were not acting with advance consent to search.

8    Accordingly, all items seized from the 219th St apartment should be suppressed as to

9    defendant Sandoval.

10        Topping it all off is the fact that Mr. Sandoval was discharged from

11   probation on March 9, 2017, without having incurred any violations of probation

12   for the preceding one-year period which includes March 10, 2016 - the date of the

13   events at issue in this motion.[25]  It is clear, therefore, that none of the events of

14   March 10, 2016 had any impact on Sandoval's probation – not his arrest for alleged

15   possession of narcotics; nor the narcotics seized from the 219th St location.  How can

16   that be, if indeed the arrest and seizures were legally valid?

17        Taken together, the absence of any repercussions on Sandoval's probation;

18   the decision by the Torrance PD not to seek any prosecution of Sandoval, as shown

19   in Exhibit E; and the absence of Sandoval's DNA from the packets of

20   methamphetamine allegedly seized from his armpits, all present troubling concerns

21   regarding both the legality and integrity of the conduct by the Torrance PD

22   officers.  Suppression is therefore warranted, and at the very least, an evidentiary

23   hearing.

24

25

26

27        [25]     Exhibit M; Declaration of Marvina Strong, at par. 21; Declaration of Alejandro Sandoval, at par. 8.

28

**IV.**

**CONCLUSION**

For the reasons discussed above, this Court should suppress all items seized during the traffic stop and apartment search.  At the very least, an evidentiary hearing should be set by this Court with an order directing all law enforcement personnel involved in both the traffic stop and the search of the 219th St apartment to be present in court to give testimony without the need for a subpoena.

For the traffic stop, law enforcement personnel include: Torrance Detectives Waldrop and O'Rourke.  If the government contends that any federal law enforcement agents were present during the traffic stop, they should likewise be ordered to appear without subpoena.

For the search of the 219th Street apartment, law enforcement personnel include those listed in Exhibit A (Bates TPD 001263):

              SA FBI: Scott Macke

              SA DEA: Charles Valentine & Adam Diehl

              TPD Detectives: Sgt Venero, Concannon, Cid, Chavez,

              Krumbach, Fujimoto,

              O'Rourke, and Sgt McGee.

In addition, defense counsel requests that the Court order Probation Officer Carmen Yepez to appear at the hearing to give testimony without a subpoena.

DATED: September 15, 2021           Respectfully Submitted,


                                  **/S/**
                           **GREGORY NICOLAYSEN**
                           **Counsel for Defendant,**
                           **Alejandro Sandoval**

EXHIBIT A

**TORRANCE POLICE DEPARTMENT**

**GANG ENFORCEMENT DETECTIVES – INVESTIGATIVE REPORT**

---------------------------------------------------

**REPORT DATE**  03/10/2016

**REPORT TIME**  2300 HRS

---------------------------------------------------

**DR-FILE #**    TPD# 160013801

**REPORT TITLE**  PAROLE/PROBATION SEARCH & ARREST REPORT

---------------------------------------------------

**LOCATION**    1321 ½ WEST 219th STREET, TORRANCE, CA


**ARRESTED**    DEF. 1 – ALEJANDRO SANDOVAL – DOB: 06-21-1972 – CII: 9343216


**CHARGES**    DEF. 1 – 11378(a)/11379(a)H&S-NAR. SALES/TRANS; 3455(a)(2)-PC PRCS VIOLATION


**ARREST DATE**  03/12/2016

**ARREST TIME**  1850 HRS

---------------------------------------------------

**DETECTIVE(S)**  R. WALDROP #15471

---------------------------------------------------

**ACTIVITY**

On 3/10/2016, at approx. 1830 hours, Detective O'ROURKE and I (WALDROP) were working directed enforcement in the area of 22300 Western Blvd when we observed a vehicle (2015, CHEVY, CRUZ, CA/7LTE822) driving S/B Western in the #1 lane.


O'ROURKE and I recognized the driver of the vehicle as ALEJANDRO SANDOVAL who is an active member of the criminal street gang EAST SIDE TORRANCE (EST) and currently on searchable parole/probation – POST RELEASE COMMUNITY SUPERVISION (PRCS) – under OCA# X00351619 for narcotics.


Subsequently, we conducted a traffic stop of SANDOVAL's vehicle in the WALGREENS parking lot located on the N/E corner of WESTERN/SEPULVEDA.

TPD 001258

**BACKGROUND**

During the first two weeks of February, 2016, a non-testifying confidential source (CS) made a purchase of a controlled substance (approx. 122 grams of methamphetamine) from inside a residential location (later determined to be 1321 ½ 219th street).

The CS paid $820.00 in US Currency. The CS indicated he/she had purchased the substance from an individual they knew to be CARMEN MEREJIL (AKA CAVEMAN) and another individual described as MH, approx. 5'10, 200, BRN/BRN (hair in a ponytail), who went by the name of "ALEX".

On 2/17/2016, MATTHEW PACHECO (10/23/1990) was arrested by Detective Chavez of the Torrance Police Department for possession for sale of methamphetamine. PACHECO was in possession of approx. 16 grams of methamphetamine (LASD LAB RECEIPT K732307 & K732308). PACHECO had been contacted during the service of a narcotics search warrant at a hotel.

I (WALDROP) and DETECTIVE O'ROURKE interviewed PACHECO in the jail. PACHECO indicated that he had purchased the methamphetamine (he was arrested with) from "CAVEMAN".

PACHECO said he believed CAVEMAN was involved in ongoing drug sales with another member of EAST SIDE TORRANCE who he thought was CAVEMAN's brother – described as a Hispanic male, early 40's, black hair in a ponytail, with first name of "ALEX". PACHECO said CAVEMAN is the main source of supply for methamphetamine in the SOUTH BAY AREA (LOS ANGELES COUNTY).

Subsequently, "ALEX" was identified as ALEJANDRO SANDOVAL 6/21/1972.

**INVESTIGATION**

On 2/17/2016, ALEJANDRO SANDOVAL was identified as being on searchable parole/probation – POST RELEASE COMMUNITY SUPERVISION (PRCS) – under OCA# X00351619 for narcotics.

Beginning on 2/18/2016, DEA Special Agents assigned to Enforcement ("Group 4") began conducting surveillance at 1321 ½ 219th Street in the City of Torrance. The primary target of the surveillance was EST gang member CARMEN MEREJIL – AKA CAVEMAN.

TPD 001259

During this surveillance, ALEJANDRO SANDOVAL was observed at the 1321 ½ 219th street
address on numerous occasions in addition to his vehicle (2015, CHEVY, CRUZ, CA/7LTE822) also
being present. SANDOVAL was observed associating with MEREJIL at the location when activities
consistent with narcotics sales were occurring. *SEE RELATED DEA FORM 6 REPORTS.

On 3/10/2016 at approx. 1700 hours, DEA Special Agents from GROUP 4 established surveillance
at 1321 ½ 219th Street in the City of Torrance. The agents observed MEREJIL and SANDOVAL at
the location and activity that appeared to be narcotics related. At approx. 1830 hours agents
advised that SANDOVAL was leaving the location in his vehicle (CA/7LTE822).

Agents followed SANDOVAL to the area of 223rd STREET/WESTERN where DETECTIVE O'ROURKE
and I then observed the vehicle and conducted a traffic stop in order to conduct a search of
SANDOVAL pursuant to his probation/parole conditions. *SEE RELATED DEA FORM 6 REPORT.

Upon making contact with SANDOVAL, I observed that he appeared extremely nervous
(excessive respiration) and was tightly gripping the steering wheel. I confirmed with SANDOVAL
that he knew he was on parole/probation and subject to search. I asked SANDOVAL to unbuckle
his seatbelt and he did.

I told SANDOVAL that we stopped him for a probation compliance check; and that we needed to
confirm where he was actually living and working. I told SANDOVAL that I have seen him over at
an address on 219th street and it looked like he lived there. SANDOVAL became more nervous
and denied living on 219th street. I told SANDOVAL that we needed to search his vehicle and
person as part of the check and that he would need to exit the car.

SANDOVAL did not respond to my request and only gripped the steering wheel tighter. I asked
several more times with no compliance. Then SANDOVAL began yelling at someone (later
determined to be an *ONSTAR operator) that he was being harassed by the police and he
wanted the conversation recorded.

SANDOVAL then started yelling and screaming as though he was being assaulted; however no
one was touching him. Because SANDOVAL was no longer listening and not exiting the vehicle –

clearly in an effort to resist/delay officers in the discharge of their duties – I opened to the d/s door, grabbed SANDOVAL's left hand, and pulled it off the steering wheel.

I then used my grip on SANDOVAL's hand to pull him from the vehicle and into a prone position on the ground.

While SANDOVAL was yelling/screaming to the *ONSTAR operator, SANDOVAL was gripping the steering wheel and keeping his arms close to his body (which we later determined was because he had stored two packages of narcotics in each of his armpits).  Once on the ground, I used my body weight to control SANDOVAL while he was handcuffed. I was assisted in detaining/handcuffing SANDOVAL by Special Agent Macke with the FBI and SGT. MCGEE (Torrance PD).

Upon detaining SANDOVAL, I conducted a cursory search of his person for weapons. During the search, I located an object the size of a fist that was loose in his shirt sleeve (along his left arm). I removed this object and observed it to be a plastic baggy containing a crystalline substance suspected to be methamphetamine (later determined to weigh approx. 2.08 ounces – booked into evidence ITEM# 300)

I also located a black money belt that was secured around his waist and under his shirt. The money belt had two separate compartments. One pouch contained two separate stacks of $20 bills (US Currency) in rubber bands.

SANDOVAL was then transferred to O'ROURKE who conducted a search of SANDOVAL's pockets/person. In SANDOVAL's left front pocket, O'ROURKE recovered another quantity of US currency (mixed bills) that was rolled up.

The combined amount of US Currency found on SANDOVAL's person was later counted and determined to be $5,245 – booked into evidence ITEM# 304.

I recovered two cell phones from SANDOVAL's vehicle. One was an iPhone 6 and one was a generic "flip" phone. Both phones continued to receive phone calls and text messages while SANDOVAL was in custody. One text message was received (3/10/2016 at 1959 hours) on the flip

phone immediately after we detained SANDOVAL. The text message was from "MINA" (NFD) and indicated, "that spot is burnt out I'm at CVS".

SANDOVAL was transported to TORRANCE jail for booking by O'ROURKE and SGT. MCGEE. Prior to entering the secured jail, O'ROURKE directed SANDOVAL to read a posted advisement regarding bringing narcotics and contraband into a jail in violation of 4573(a)-PC.

O'ROURKE then gave SANDOVAL an opportunity to declare any contraband prior to entering the jail and SANDOVAL did not.

During the booking process, a strip search of SANDOVAL was conducted inside the jail. During this search an additional package of suspected methamphetamine was discovered being held in SANDOVAL's right arm pit (later determined to weigh approx. 0.96 ounces – booked into evidence ITEM #301).

SANDOVAL's vehicle was towed per 22651(h) CVC – driver arrested. SANDOVAL's vehicle was searched by O'ROURKE and MCGEE. During a search of the vehicle, there were several contact lists and address books that were discovered. These documents contained the names, addresses, and phone numbers of many other suspected gang members in the harbor area. This information was photocopied and left in the vehicle.

There was an additional cell phone recovered from the vehicle. This cell phone along with the other two phones previously located in the vehicle was booked into evidence ITEM #302.

In addition, there were several items of mail that had been addressed to SANDOVAL and received at 1321 ½ WEST 219th STREET. The mail had been received in the month of FEBRUARY and MARCH of 2016.

The most recent piece of mail received at the address for SANDOVAL was post marked 03/04/2016. Several items of the mail were collected as evidence for indicia indicating SANDOVAL's residence booked into evidence ITEM #303.

Subsequently, I responded to 1321 ½ WEST 219th STREET to conduct a compliance search pursuant to SANDOVAL's condition of release. I was assisted in the search of the premises by the following detectives and agents:

    SA-FBI: SCOTT MACKE

    SA-DEA: CHARLES VALENTINE & ADAM DIEHL

    TPD-DETECTIVES: SGT VENERO, CONCANNON, CID, CHAVEZ, KRUMBACH, FUJIMOTO, O'ROURKE, and SGT MCGEE

Detectives CONCANNON, CID, CHAVEZ, KRUMBACH, and FUJIMOTO approached the front of the location and knocked several times. Detectives identified themselves and demanded entry for the search of the location. After no response was received from inside, detectives forced entry to the residence and secured the interior.

Upon the premises being secured, I entered and photographed the primary rooms and area where there appeared to be evidence relevant to our gang and narcotics investigation. *SEE ATTACHED PHOTOGRAPHS.

During the search, I noted that the premises is a one bedroom apartment. There is a living room, kitchen, bathroom, small hallway, and one bedroom. All of the packaged narcotics – and the majority of relevant evidence – was located in the single bedroom on the N/E corner of the premises.

There were several items that were located and photographed, but not taken as evidence. The following items were photographed and left in place:

A glass bowl in the kitchen that contained crystalline residue from possibly cutting suspected methamphetamine; A statue of a 'panther' which is an animal that members from the criminal street gang EAST SIDE TORRANCE identify/associate with; One canister of Acetone; a glass pipe; a canister of Denatured Alcohol; a portable kitchen stove-top; a canister of 'bernzomatic' propane; and green notebook that had one page of writing on it containing names 'Pancho' and 'Big Head'; I observed a white "grease board" with the names "CAVE" and "B-GIRL" written in green marker along with numbers/amounts that were being added/tallied; I also observed the words "EST" written on several of the notepads that contained names.

**EVIDENCE**

The following items of evidence were located at 1321 ½ WEST 219th and collected:


THE N/E CORNER BEDROOM:


SOUTH WALL CLOSET

ITEM #101 – Plastic container (purple top) containing suspected methamphetamine; one
item of suspected narcotics had a note with the name "Alex" on it.

ITEM #102 – Four plastic baggies containing suspected methamphetamine

ITEM #103 – Seven gallon size plastic baggies containing suspected methamphetamine

ITEM#104 – Seven plastic containers (pink tops) containing suspected methamphetamine

ITEM #105 – Two tightly packaged plastic bags (gallon size) containing suspected
methamphetamine found inside a blue jansport bag hanging in the closet

ITEM #106 – One-hundred and fifty dollars in US Currency

ITEM #107 – Unknown amount of US Currency in $2 denominations

ITEM #108 – Male addressed to SANDOVAL

ITEM #109 – Grey iPhone six

ITEM #122 – Samsung tablet


BLACK NIGHTSTAND TABLE S/S OF BED

ITEM #110 – Blue wexford spiral notebook with names and written denominations


TAN NIGHTSTAND TABLE N/S OF BED

ITEM #111 – Electronic law enforcement scanner

ITEM #116 – Plastic baggie containing white crystalline substance of suspected cocaine
from top drawer

ITEM #117 – Tightly packaged rubber tube (prepared for insertion into a body cavity) of
unknown substance suspected of being narcotics from top drawer

ITEM #118 – Small plastic baggie with crystalline substance of suspected cocaine

ITEM #119 – Possible rental papers in the of LISA GARZA and money transfer receipts

ITEM #120 – Yellow notepad with the names "KATHERINE" and "CAVEMAN" written on
the front with various numbers and subtotals.

<u>TAN CLOTHES DRESSER W/S OF BED</u>

ITEM #112 – Two plastic baggies (gallon size) containing suspected methamphetamine

found in N/S top drawer

ITEM #113 – Yellow plastic container containing suspected methamphetamine from N/S

top drawer

ITEM #114 – total of three digital scales

ITEM #115 – Priority USPS mail addressed to RAUL MOLINA from N/S bottom drawer

ITEM #121 – Black 7MODO security video device that had approx 4 cameras attached.

This device possibly retains day to day activity at the residence.


LIVING ROOM AREA


<u>POKER/GAMBLING TABLE</u>

ITEM#201 – Green plastic vial containing nineteen pills of suspected ecstasy


The following items of evidence were located on SANDOVAL's person/vehicle and collected:


<u>SANDOVAL'S PERSON</u>

ITEM #300 – Plastic baggie, suspected methamphetamine – left arm in field

ITEM #301 – Plastic baggie, suspected methamphetamine – right armpit in jail

ITEM #304 – US Currency determined to be $5,245


<u>SANDOVAL'S VEHICLE</u>

ITEM #302 – Three cell phones recovered from SANDOVAL's vehicle

ITEM #303 – US Mail collected from SANDOVAL's vehicle


All items of listed evidence were collected and itemized. A receipt for the property was

completed and left inside the location.


---------------------------------------------------

Detective R. Waldrop #15471

---------------------------------------------------


TPD 001265

EXHIBIT B

COUNTY OF LOS ANGELES
## PROBABLE CAUSE DETERMINATION (DECLARATION)

| Location Booked:<br>TORRANCE POLICE DEPT | Booking No: | Arrest File No:<br>160013801 |
|---|---|---|

| Arrestee/Suspect (Last, First , Middle):<br><br>Sandoval, Alejandro | DOB:<br><br>06/21/1972 |
|---|---|

Address: 1746 Gramercy Pl, Los Angeles, CA 90032

| Booking Charge(s):<br>11378(a) HS, 11379(a) HS, 4573(a) PC<br><br>Misdemeanor: ☐    Felony: X | Supplemental Holds/Warrants Charges<br><br>PRCS Flash Hold |
|---|---|

| Date/Time of Arrest:<br>03/10/16 – 1850 hours | 48 Hour Expiration Date and Time:<br>03/12/16 – 1850 hours |
|---|---|

| Arresting Agency/Division:<br><br>TORRANCE POLICE DEPARTMENT | Arresting Officer(s):<br>**Waldrop**<br>**O'Rourke** | Employee No.:<br>**15471**<br>**19085** |
|---|---|---|

| Supervisor(s) Approving:<br><br>Sgt. M. McGee | Employee No.:<br><br>14220 | Date/Time:<br><br>3/10/16  2020 | Contact Phone No.:<br><br>(310) 328-3456 |
|---|---|---|---|

Facts establishing elements of offense(s)/violation(s).  Information identifying/connecting arrestee/suspect by name with the violation(s) listed:

On March 10, 2016, detectives/ officers conducted a traffic stop to conduct a PRSC compliance search / search warrant on the person of Sandoval and his vehicle. The traffic stop was conducted at Sepulveda / Western in the City of Torrance. Sandoval was the driver and sole occupant. During a search of Sandoval's person, Detective's recovered a large plastic baggy containing a sales quantity of suspected methamphetamine, a large amount of currency and two cell phones. Sandoval was arrested for 11378 HS , 11379 HS and transported to TPD jail. Prior to entering the jail facility Sandoval was shown a posted sign and also admonished by Detective O'Rourke about not bringing any contraband into the jail. During a subsequent strip search once inside the jail another large amount of suspected methamphetamine was observed fall to the floor from his right armpit area. The additional charge of 4573(a) PC was added to his charges. Probation was contacted to request a PRCS flash hold

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on  03-10-16                    2015 hours                    in the County of Los Angeles, California.
    (date)                                  (time)

                                    O'Rourke                                    19085
(Signature)                       (Print Name)                              (Employee No.)

| **Telephonic Determination ONLY** | **Probable Cause Determination** |
|---|---|
| On _____ , I was placed under oath and read the contents of the foregoing, including the contents of any attached reports or declaration, verbatim to the Honorable _____<br><br>The Judicial Officer advised me that there<br>(  ) IS (  ) IS NOT probable cause to believe this arrestee has committed a crime.<br>I declare under penalty of perjury that the foregoing is true and correct.  Executed in Los Angeles County, California.<br><br><br>_____      _____<br>(Signature)            (Employee No.) | On the basis of either reports reviewed and/or officer's declaration, hereby determine that there (  ) IS (  ) IS NOT probable cause to believe this arrestee has committed a crime.<br><br><br>_____      _____<br>(Judicial Officer's Signature)    (Date)<br><br><br>_____      _____<br>(Block Stamp)          (Time) |

PCD ✓        TPD281 rev. 5/09

EXHIBIT C

## Narrative

```
        TORRANCE POLICE DEPARTMENT
ARREST REPORT

REPORTING
OFFICER(S): WALDROP / O'ROURKE   15471 / 19085

ARRESTEE: ALEJANDRO SANDOVAL - DOB: 06-21-1972

TIME OF
ARREST: 3/10/2016 @ 1850

CHARGES: 11378(a) HS, 11379(a)H&S, 4573(a)PC

DETAILS:
On 3/10/2016, at approx. 1830 hours, Detective O'ROURKE and I (WALDROP) were
working direct enforcement in the area of 22300 Western Blvd when we observed a
vehicle 2015, CA/7LTE822 driving S/B Western in the #1 lane. O'ROURKE and I
recognized the driver as ALEJANDRO SANDOVAL who is an active member of the
criminal street gang East Side Torrance and currently on searchable probation
(PRCS) OCA X00351619 for narcotics.

Subsequently, we conducted a traffic stop and search of SANDOVAL that recovered
an amount of suspected methamphetamine and US Currency in a weight and
denominations consistent with sales of narcotics. SANDOVAL was arrested for
above listed charges.

There was also recent mail in the vehicle addressed to SANDOVAL that indicated
his current address is 1321 1/2 219th street in Torrance. Based on the evidence
found in the vehicle, at approx. 2200 hours we conducted a probation search at
1321 1/2 219th street and recovered a large amount of additional suspected
methamphetamine and evidence of narcotics sales.


See detective supplemental report.
See property report.

R. WALDROP #15471



SUPERVISOR APPROVING: Sgt. McGee 14220 / LT RJ WATT #13502
```

TPD 001333

EXHIBIT D

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

**Page 1 of 5**

| 1. Program Code ▮▮▮▮ | 2. Cross File | Related Files | 3. File No. ▮▮▮▮▮▮▮ | 4. G-DEP Identifier ▮▮▮▮ |
|---|---|---|---|---|

| 5. By: James V Perlez, SA | 6. File Title |
|---|---|
| At: Los Angeles FDO | East Side Torrance |

| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | 8. Date Prepared 03-14-2016 |
|---|---|

9. Other Officers: See paragraph #19.

10. Report Re: Surveillance of 1321 1/2 West 219th Street, Torrance, California 90501 on March 10, 2016.

### SYNOPSIS

On March 10, 2016, Drug Enforcement Administration (DEA) Los Angeles Field Division, Group 4 Special Agents (SAs) established surveillance in the vicinity of 1321 1/2 West 219th Street, Torrance, California 90501. This address is a suspected illicit drug storage location for Carmen MEREJIL and associates.

### DETAILS

1.  At approximately 4:30 p.m., surveillance was established in the vicinity of 1321 1/2 West 219th Street, Torrance, California 90501.

2.  At approximately 5:35 p.m., SA Adam Diehl observed a black Honda 2-door Accord bearing California license plate #6MYK658 (registered to Connie GUERRERO, 41480 Terwilliger Road, Anza, California 92539) arrive and park on the north curb-side of West 219th Street, facing westbound. SA Diehl observed an unidentified female Hispanic (UF1) as the driver and an unidentified male Black (UM1) as the passenger.

3.  At approximately 5:40 p.m., SA Diehl observed UM1 wearing a black hat, a shirt imprinted with "Straight Outta Carson", and dark plaid shorts. UM1 exited the passenger side of the black Honda Accord and met with Manuel Lerom MAGALLANES wearing a gray shirt and dark plaid shorts. UF1 remained in the driver's seat.

**AGENT'S NOTE:** MAGALLANES is a known gang member and part of La Rana street gang; MAGALLANES resides at 1319 West 219th Street, Torrance, California 90501.

| 11. Distribution: Division | 12. Signature (Agent)  James V Perlez, SA | 13. Date 03-23-2016 |
|---|---|---|
| District | 14. Approved (Name and Title)  /s/ Jesse S Fourmy, GS | 15. Date 03-23-2016 |
| Other | | |

DEA Form     - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

DEA 000368

**U.S. Department of Justice**
Drug Enforcement Administration

| | | |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 1. File No. ████████ | 2. G-DEP Identifier ████ |
| | 3. File Title East Side Torrance | |
| 4. Page **2** of **5** ██████████ | 6. Date Prepared 03-14-2016 | |

4.   At approximately 5:44 p.m., SA Diehl observed MAGALLANES depart the area in a blue Chevy Silverado bearing California license plate #6P95405 (registered to Manual Leroy PMAGALLANES, 1319 West 219th Street, Torrance, California 90501).  UM1 returned to and sat in the passenger seat of the black Honda Accord.

5.   At approximately 5:47 p.m., SA Diehl observed a green Honda Civic bearing California license license plate #4SXJ538(registered to Guadalupe RIVERA, 22720 Orchard Avenue, Carson, California 90745) arrive at West 219th Street and park on the north curb-side in front of 1321 1/2 West 219th Street, and park facing westbound.

6.   At approximately 5:54 p.m., SA Diehl observed UM1 walking from the vicinity of 1321 1/2 West 219th Street, Torrance, California 90501 holding a black package.  UM1 walked back to the black Honda Accord, and placed the black package inside the trunk of the vehicle.  UM1 got into the passenger seat of the vehicle, and then the black Honda Accord departed the location heading westbound on West 219th Street.

7.   At approximately 6:00 p.m., SA James Young observed the black Honda Accord park on the west curb-side in the vicinity of 1603 West 220th Street, Torrance, California 90501. Group Supervisor (GS) Jesse Fourmy observed UM1 and UF1 exit the black Honda Accord, and enter a garage attached to the residence located at 1569 West 220th Street, Torrance, California 90501.

8.   At approximately 6:10 p.m., GS Fourmy observed UF1 another unidentified female White UF2 enter the black Honda Accord, then depart the location.  Surveillance was terminated on the black Honda Accord as the vehicle continued southbound on Vermont Avenue.

9.   At approximately 6:21 p.m., SA Diehl observed a black Chevrolet Cruze bearing California license plate #7LTE822 (registered to Alejandro SANDOVAL, 4851 Saturn Street, Los Angeles, California 90019) arrive in the vicinity of 1321 1/2 West 219th Street, parking north-curb side facing westbound.

---

DEA Form  - 6a
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| | |
|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 1. File No. ▓▓▓▓▓▓▓▓    2. G-DEP Identifier ▓▓▓▓ |
| | 3. File Title<br>East Side Torrance |
| 4.<br>Page **3** of **5** | |
| ▓▓▓▓▓▓▓▓ | 6. Date Prepared<br>03-14-2016 |

10.   At approximately 6:42 p.m., SA Diehl observed the black Chevrolet Cruze drive westbound on West 219th Street.   Surveillance units then observed the black Chevy Cruze continue southbound on Halldale Avenue.

11.   At approximately 6:50 p.m., SA Drew Kalies observed the black Chevrolet Cruze enter the Walgreens parking lot located at 22930 South Western Avenue, Torrance, California 90501. At this time, Torrance Police Department Detectives Robert Waldrop #15471 and Sean O' Rourke #19085 conducted a traffic stop of the black Chevrolet Cruze.

**AGENT'S NOTE:**  For further details regarding the traffic stop, reference Torrance Police Department Incident Report #160013801 attached to this DEA-6 Report of Investigation.

12.   At approximately 9:12 p.m., SA Paul Tajii observed a black Mercedes-Benz sedan bearing California license plate 6YYN132 (registered to Katherine PHAM, 1533 West 221st Street, Torrance, California 90501) arrive at the 1321 1/2 West 219th Street location and park north curb-side facing westbound.

13.   At approximately 9:54 p.m., SA Tajii observed the green Honda Civic depart the location and drive eastbound on West 219th Street.   SA James Perlez observed a silver Chevrolet Impala bearing California license plate #7XCL977 (registered to Esther CHAN, 13121 Sandra Place City, Garden Grove, California 92843) also depart the location and travel in tandem with the green Honda Civic and continue eastbound on West 219th Street and then southbound on Normandie Avenue.

14.   At approximately 10:05 p.m., SA Young observed the green Honda Civic and silver Chevrolet Impala enter the Food 4 Less parking lot located at 851 Sepulveda Boulevard, Torrance, California 90502.   Initially, the subject vehicles parked head to tail with their respective driver's sides adjacent to each other on the south side of the parking lot.   A few minutes later, the green Honda Civic and silver Chevrolet Impala then parked next to each other facing east in the parking lot.

15.   At approximately 10:15 p.m., GS Fourmy observed the green Honda Civic and silver Chevrolet Impala depart the Food 4 Less parking lot in tandem and drive northbound on Vermont Avenue.   At this time, GS Fourmy

---

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

DEA 000370

EXHIBIT E

**City of Torrance, Police Department**
## Suspect Detention - Release - Amended Charges

Incident# 16 0013801

Defendant's Name ALEJANDRO SANDOVAL

Booking# 4592098                    Date of Arrest 3/10/16

| Original Charges (indicate Felony or Misdemeanor) | Amended / Remaining Charges (indicate Felony or Misdemeanor) | |
|---|---|---|
| 11378  HS  F/M | F/M | ( ) WARRANTS |
| 11379(a)  HS  F/M | F/M | (X) MISC. HOLD (i.e., Parole, Probation, ICE, etc.) 3454(c) PROS |
| 4573  PC  F/M | F/M | |
| F/M | F/M | ( ) OTHER INFO: |
| F/M | F/M | |

**CERTIFICATE OF RELEASE:** As required by provisions of Penal Code Section 851.6, I hereby certify that the named person, taken into custody by the Torrance Police Department on the listed date, was deemed a detention only and not an arrest. The Torrance Police Department released the subject on the below date pursuant to section 849(b)(1) PC, 849(b)(2) PC, or 849(b)(3) PC. (Circle appropriate section)

**REASON FOR RELEASE:**

(X) Further investigation appears necessary before prosecution can be initiated

( ) The complainant withdrew the complaint

( ) Ascertainable or admissible evidence is insufficient to proceed

(X) Other reason INSUFFICIENT FOR DA TO FILE AT THIS TIME.

R WALDROP  15471                    R WALDROP  15471          3/13/16
Signature of releasing person        Print name of releasing person and title    Date

Brian K O'Steen #14094              LT. BRIAN O'STEEN #14094   3-13-16
Signature of authorizing supervisor   Print name of authorizing supervisor and title   Date

### STATEMENT OF PROBABLE CAUSE
(Complete if arrestee is in custody at the Torrance Police Department and agrees to the contents herein)

I, the undersigned, do hereby acknowledge and agree that probable cause existed for my detention and arrest. Therefore, I hereby release the Torrance Police Department and the City of Torrance, its employees, and /or agents, from any and all liability arising out of my detention and arrest. I understand and agree that I am being released, and that I am not required to sign this *Release of Liability* before release. I sign this release without coercion and of my own free will having read the contents herein.

Arrestee's signature              Witness                    Date

Distribution       RECORDS: White / Green / Yellow       JAIL: Pink       ARRESTEE (if in custody): Gold

EXHIBIT F

**U.S. Department of Justice**
Drug Enforcement Administration

*(DO NOT USE FOR NON-DRUG EVIDENCE)*
**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED, OR SEIZED**

| 1. Date Prepared: 03-16-2016 | 2. Case Number: ■■■■■ | 3. File Title: East Side Torrance | | 4. GDEP #: ■■■■ |
|---|---|---|---|---|
| 5. Group Number: Group 4 | 6. Program Code: VRN100 | 7. Date taken into DEA Custody: 03-15-2016 | 8. Where obtained (Country, City, State) USA, Torrance, CA | |

9. Is this document for informational purposes only?  ☒ No   ☐ Yes

10. How obtained?  ☐ Purchase cost per exhibit: (1)_____
   (2)_____ ; (3)_____
   ☒ Seized
   ☐ Money Flashed

   ☐ Compliance Sample (Non-Criminal)   ☐ Internal Body Carry*
   ☐ Free Sample   ☐ Stockpile Reverse Undercover
   ☐ Clandestine Laboratory Seizure   ☐ Other:_____
   ☐ Regulatory
   ☐ Abandoned

   *A biohazard warning label must be placed on the heat sealed evidence envelope containing the evidence acquired from an internal body carry.

| 11. If referral, name of referring agency: | 11a. Case #: | 11b. Seizure #: |
|---|---|---|

12. If seized for forfeiture (pseudoephedrine) and held as evidence or for safekeeping, was a SSF prepared?
   ☐   If yes, attach SSF and enter Asset ID (formerly CATS ID) # _____
        Provide asset (fair market) value at time of seizure _____
   ☐   If no, explain: _____

| 13. Exhibit # | 14. FDIN # | 15. Alleged Drugs | 16. Describe Marks on Labels (Note: If original container is separate from drug, enter subexhibit # and describe original container fully.) | 17. Seized | 18. Submitted | 19. Retained |
|---|---|---|---|---|---|---|
| 15 | | A3 - Crystal Meth ("ICE") | 1 small ziplock baggie containing a white crystalline substance. TPD Exhibit number 300 | 57.6 G | 57.6 G | 0 G |
| 16 | | A3 - Crystal Meth ("ICE") | 1 small ziplock baggie containing a white crystalline substance. TPD Exhibit number 301 | 29 G | 29 G | 0 G |

*Approx. Gross Quantity (columns 17, 18, 19 span header)*

20. Is this a bulk drug seizure?
   ☐ No   ☐ Yes (If yes, provide date of 60-day letter: _____)

21. Identify:
   ☐ N/A   ☐ Threshold DEA-7 or   ☐ Bulk DEA-7

22. ☐ Fingerprint Analysis Requested for exhibit(s): _____

22a. Compare Latent Prints with subject(s):

| Name | FBI and or State ID Number(s) | Date of Birth | Identify type of prints attached | | |
|---|---|---|---|---|---|
| | | | Finger | Palm | None |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |

23. REMARKS:
On March 10, 2016, Detectives of the Torrance Police Department ("TPD") conducted an parolee search operation targeting state parolee Alejandro SANDOVAL. The operation involved the Detectives conducting a traffic stop on SANDOVAL in Torrance, California. During the traffic stop SANDOVAL was found in possession of two baggies of suspected methamphetamine identified as TPD Exhibits 300 and 301. Exhibits 300 and 301 were processed and maintained as TPD evidence according to their policies and procedures.

On March 15, 2016, DEA Special Agents ("SA") Adam Diehl met with TPD Detectives in Torrance, California. Custody of

| 24. Type/Print Name of Special Agent/Task Force Officer/Diversion Investigator: Charles R Valentine, SA | 25. Type/Print Name of Supervisor: /s/ Jesse S Fourmy, GS |
|---|---|
| 24a. Signature and Date:                    03-16-2016 | 25a. Signature and Date:                    03-18-2016 |

**DRUG EVIDENCE CUSTODIAN RECEIPT REPORT (FOR FIELD OFFICE USE ONLY)**

| 26. No. Packages: | 27. Print/Type Name Received From: | 27a. Signature and Date: |
|---|---|---|
| 28. SEAL ☐ Broken ☐ Unbroken | 29. Print/Type Name Received By: | 29a. Signature and Date: |
| 30. Date Entered Into ENEDS/CERTS: | | |

**LABORATORY EVIDENCE RECEIPT REPORT (FOR LABORATORY USE ONLY)**

| 31. No. Packages: | 32. Print/Type Name Received From: | 32a. Signature and Date: |
|---|---|---|
| 33. SEAL ☐ Broken ☐ Unbroken | 34. Print/Type Name Received By: | 34a. Signature and Date: |

35. Laboratory #s:   (1)_____   (2)_____   (3)_____
36. Laboratory Control #s:   (1)_____   (2)_____   (3)_____

DEA Form 7 (10/07) *(Previous editions are obsolete)*

DEA 000487

8198878

**U.S. Department of Justice**
Drug Enforcement Administration

*(DO NOT USE FOR NON-DRUG EVIDENCE)*
REPORT OF DRUG PROPERTY COLLECTED, PURCHASED, OR SEIZED - CONTINUATION SHEET

| 1. Date Prepared: 03-16-2016 | 2. Case Number: ▉▉▉▉▉▉▉▉ | 3. File Title: East Side Torrance | | 4. GDEP #: ▉▉▉▉▉ |
|---|---|---|---|---|
| 5. Group Number: Group 4 | 6. Program Code: VRN100 | 7. Date taken into DEA Custody: 03-15-2016 | 8. Where obtained (Country, City, State) USA, Torrance, CA | |

| 13. Exhibit # | 14. FDIN # | 15. Alleged Drugs | 16. Describe Marks or Labels (Note: If original container is separate from drug, enter subexhibit # and describe original container fully.) | Approx. Gross Quantity | | |
|---|---|---|---|---|---|---|
| | | | | 17. Seized | 18. Submitted | 19. Retained |
| | | | | | | |

**22a. Compare Latent Prints with subject(s):**

| Name | FBI and or State ID Number(s) | Date of Birth | Identify type of prints attached | | |
|---|---|---|---|---|---|
| | | | Finger | Palm | None |
| | | | ☐ | ☐ | ☒ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |

**23. REMARKS:** DEA-7 Continuation Form for Exhibit# 15, 16

Exhibits 300 and 301 was transferred to SA Diehl as witnessed by SA Simon Park. On that same day, SA Diehl sealed Exhibits 300 and 301 in DEA SSEE number L000007799 and placed in temporary overnight drug storage as witnessed by SA Simon Park.

On March 16, 2016, SA Diehl retrieved Exhibits 300 and 301 from overnight drug storage as witnessed by SA Paul Tajii. SA Diehl then processed Exhibits 300 and 301 as DEA Evidence as Witnessed by SA Park. Exhibit 300 was processed as DEA Exhibit 15 and is described as a zip lock baggie containing 57.6 gross grams of a white crystalline substance (suspected methamphetamine via positive Trunarc test) and was sealed in SSEE S000458353. Exhibit 301 was processed as DEA Exhibit 16 and is described as a zip lock baggie containing 29 gross grams of a white crystalline substance (suspected methamphetamine via positive Trunarc test) and was sealed in SSEE S000458354. SA Diehl kept Exhibits 15 and 16 in his care custody and control until he placed them back into temporary drug storage as witnessed by SA Park.

On March 17, 2016, SA Diehl removed Exhibits 15 and 16 from temporary drug storage as witnessed by SA Park. SA Diehl then transferred custody of Exhibits 15 and 16 to the Southwest DEA Laboratory for analysis and safe keeping as witnessed by SA Park.

DEA Form 7c (10/08) *(Previous editions are obsolete)*

DEA 000488

EXHIBIT G

**U.S. Department of Justice**
Drug Enforcement Administration

*(DO NOT USE FOR NON-DRUG EVIDENCE)*
**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED, OR SEIZED**

| 1. Date Prepared: 03-16-2016 | 2. Case Number: ▓▓▓▓▓ | 3. File Title: East Side Torrance | | 4. GDEP #: ▓▓▓▓ |
|---|---|---|---|---|
| 5. Group Number: Group 4 | 6. Program Code: ▓▓▓▓ | 7. Date taken into DEA Custody: 03-15-2016 | 8. Where obtained (Country, City, State) USA, Torrance, CA | |

9. Is this document for informational purposes only?   ☒ No   ☐ Yes

10. How obtained?   ☐ Purchase cost per exhibit: (1)_____
   (2)_____ ; (3)_____
   ☒ Seized
   ☐ Money Flashed

   ☐ Compliance Sample (Non-Criminal)    ☐ Internal Body Carry*
   ☐ Free Sample    ☐ Stockpile Reverse Undercover
   ☐ Clandestine Laboratory Seizure    ☐ Other:_____
   ☐ Regulatory
   ☐ Abandoned

   *A biohazard warning label must be placed on the heat sealed evidence envelope containing the evidence acquired from an internal body carry.

11. If referral, name of referring agency:          11a. Case #:          11b. Seizure #:

12. If seized for forfeiture (pseudoephedrine) and held as evidence or for safekeeping, was a SSF prepared?
   ☐ If yes, attach SSF and enter Asset ID (formerly CATS ID) # _____
   Provide asset (fair market) value at time of seizure _____
   ☐ If no, explain: _____

| 13. Exhibit # | 14. FDIN # | 15. Alleged Drugs | 16. Describe Marks on Labels (Note: If original container is separate from drug, enter subexhibit # and describe original container fully.) | Approx. Gross Quantity | | |
|---|---|---|---|---|---|---|
| | | | | 17. Seized | 18. Submitted | 19. Retained |
| 3 | 2016651579 | A3 - Crystal Meth ("ICE") | 1 plastic container containing a white crystalline substance. TPD Exhibit number 101 | 403.9 G | 403.9 G | 0 G |
| 4 | | Z1 - No Specific Drug | 1 ziplock baggie containing a white powder substance (Trunarc indicates Levamisole). TPD Exhibit number 102. | 30.2 G | 30.2 G | 0 G |
| 5 | | A3 - Crystal Meth ("ICE") | 3 ziplock bags containing a white crystalline substance.  TPD Exhibit number 102. | 26.9 G | 26.9 G | 0 G |

20. Is this a bulk drug seizure?
   ☐ No   ☐ Yes (If yes, provide date of 60-day letter: _____ )
21. Identify:
   ☐ N/A   ☐ Threshold DEA-7 or   ☐ Bulk DEA-7

22. ☐ Fingerprint Analysis Requested for exhibit(s): _____

22a. Compare Latent Prints with subject(s):

| Name | FBI and or State ID Number(s) | Date of Birth | Identify type of prints attached | | |
|---|---|---|---|---|---|
| | | | Finger | Palm | None |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |

23. REMARKS:
On March 10, 2016, Detectives of the Torrance Police Department ("TPD") conducted an parolee search operation targeting state parolee Alejandro SANDOVAL.  The operation involved the search of SANDOVAL's residence at 1321 1/2 West 219th Street, Torrance, California.  During search, a plastic container containing a white crystalline substance (TPD Exhibit 101), a ziplock bag containing a white powder substance (TPD Exhibit 102) and three ziplock bags containing a white crystalline substance (also TPD Exhibit 102) were located in the apartment's only bedroom. Exhibits 101 and 102 were processed and maintained as TPD Evidence according to their policies and procedures.

| 24. Type/Print Name of Special Agent/Task Force Officer/Diversion Investigator: Charles R Valentine, SA | 25. Type/Print Name of Supervisor: /s/ Jesse S Fourmy, GS |
|---|---|
| 24a. Signature and Date:                    03-16-2016 | 25a. Signature and Date:                    03-18-2016 |

**DRUG EVIDENCE CUSTODIAN RECEIPT REPORT (FOR FIELD OFFICE USE ONLY)**

| 26. No. Packages: | 27. Print/Type Name Received From: | 27a. Signature and Date: |
|---|---|---|
| 28. SEAL ☐ Broken ☐ Unbroken | 29. Print/Type Name Received By: | 29a. Signature and Date: |
| 30. Date Entered Into ENEDS/CERTS: | | |

**LABORATORY EVIDENCE RECEIPT REPORT (FOR LABORATORY USE ONLY)**

| 31. No. Packages: | 32. Print/Type Name Received From: | 32a. Signature and Date: |
|---|---|---|
| 33. SEAL ☐ Broken ☐ Unbroken | 34. Print/Type Name Received By: | 34a. Signature and Date: |

35. Laboratory #s:   (1)_____   (2)_____   (3)_____
36. Laboratory Control #s:   (1)_____   (2)_____   (3)_____

DEA Form 7 (10/07)  *(Previous editions are obsolete)*

8198909

DEA 000476

EXHIBIT H

```
CNCD         POST APS - COUNT CONDITIONS OF PROBATION DATA          10/01/18
C HUBER      RELEASE                                                16:32:48
                CASE STAT: CS    CNT STAT: CS     COUNT  :  1 OF 1
X-NUMBER : X00351619  COURT CASE NO.: PB032910_____  COUNT NO.: 1__
NAME: SANDOVAL            ALEXANDRO                   PAROLE:  _____
NAME KNOWN TO COURT : SANDOVAL           ALEXANDRO
CHARGE CODE : O PC 3451(A)
DESCRIPTION : POST-RELEASE COMMUNITY SUPERVISION (PRCS)
COURT      : P PRL BRD       JUDGE :
========================================================================
ACT ORDER DATE REV DT CODE CJ-CDE RECOM  34 CONDITIONS OF PROBATION

 _  06/23/2015          X12    O    PRCS: SEARCH/SEIZURE
 _  06/23/2015          X27    O    PRCS: SUBMIT TO NARC/ALCOHOL TESTING
 _  06/23/2015          X31    O    PRCS: ABIDE BY PROGRAM RULES ETC
 _  06/23/2015          X43    O    PRCS: NOT BE GANG MEMBER
 _  06/23/2015          X54    O    COUNTY PAROLE: NOT USE/POSSESS
 _  06/23/2015          X55    O    COUNTY PAROLE: NOT ASSOCIATE
 _  06/23/2015          X66    O    PRCS: CDC1515 - WAIVE EXTRADITION
 _  06/23/2015          X67    O    PRCS: CDC1515 - PSYCH TREATMENT FACILITY
VALID ACTIONS: (I)                                         JUMP: _____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
       HELP  TBLS  RTRN  CNCL  CNVD          UP   DOWN  FIND  CT-1  CT+1  CNDD
```

NOT COURT ORDERED

CH 001093

```
CNCD          POST  APS - COUNT CONDITIONS OF PROBATION DATA              10/01/18
C HUBER       RELEASE                                                     16:33:22
                    CASE STAT: CS     CNT STAT: CS      COUNT    :   1 OF 1
X-NUMBER : X00351619  COURT CASE NO.:  PB032910_____     COUNT NO.: 1__
NAME: SANDOVAL            ALEXANDRO                      PAROLE: _____
NAME KNOWN TO COURT : SANDOVAL            ALEXANDRO
CHARGE CODE : O PC 3451(A)
DESCRIPTION :  POST-RELEASE COMMUNITY SUPERVISION (PRCS)
COURT       :  P PRL BRD     JUDGE :
=============================================================================
ACT ORDER DATE REV DT CODE CJ-CDE RECOM   34 CONDITIONS OF PROBATION

_   06/23/2015            X68    O    PRCS: CDC1515 - OTHER JURISDICTION
_   06/23/2015            X69    O    PRCS: CDC1515 - REPORT WITHIN TWO DAYS
_   06/23/2015            X70    O    PRCS: CDC1515 - REPORT EMPLOYMENT
_   06/23/2015            X71    O    PRCS: CDC1515 - INFORM OF RESIDENCE/ETC
_   06/23/2015            X72    O    PRCS: CDC1515 - COMPLY WITH INSTRUCTIONS
_   06/23/2015            X73    O    PRCS: CDC1515 - NOT BE ABSENT
_   06/23/2015            X74    O    PRCS: CDC1515 - NOT ENGAGE CRIM CONDUCT
_   06/23/2015            X75    O    PRCS: CDC1515 - INFORM OF NEW ARREST
VALID ACTIONS: (I)                                               JUMP: ____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      HELP  TBLS  RTRN  CNCL  CNVD        UP    DOWN  FIND  CT-1  CT+1  CNDD
```

```
CNCD          POST  APS - COUNT CONDITIONS OF PROBATION DATA              10/01/18
C HUBER       RELEASE                                                     16:33:30
                     CASE STAT: CS     CNT STAT: CS     COUNT   :   1 OF 1
X-NUMBER : X00351619 COURT CASE NO.: PB032910_____  COUNT NO.: 1__
NAME: SANDOVAL           ALEXANDRO                       PAROLE: _____
NAME KNOWN TO COURT : SANDOVAL           ALEXANDRO
CHARGE CODE : O PC 3451(A)
DESCRIPTION : POST-RELEASE COMMUNITY SUPERVISION (PRCS)
COURT      : P PRL BRD      JUDGE :
=========================================================================
ACT ORDER DATE REV DT CODE CJ-CDE RECOM  34 CONDITIONS OF PROBATION

 _  06/23/2015           X76    O    PRCS: CDC1515 - FIREARMS/ETC
 _  06/23/2015           X77    O    PRCS: CDC1515 - NOT OWN/ETC WEAPON
 _  06/23/2015           X78    O    PRCS: CDC1515 - NOT POSSESS WEAPON
 _  06/23/2015           X79    O    PRCS: CDC1515 - NOT POSSESS KNIVES
 _  06/23/2015           X80    O    PRCS: CDC1515 - NOT OWN CROSSBOW
 _  06/23/2015           X81    O    PRCS: CDC1515 - FLASH INCARCERATION
 _  06/23/2015           X82    O    PRCS: CDC1515 - REHABILITATION PROGRAM
 _  06/23/2015           X83    O    PRCS: CDC1515 - SPECIAL CONDITIONS
VALID ACTIONS: (I)                                              JUMP: ____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      HELP  TBLS  RTRN  CNCL  CNVD        UP   DOWN  FIND  CT-1  CT+1  CNDD
```

CH 001095

```
CNCD         POST  APS - COUNT CONDITIONS OF PROBATION DATA           10/01/18
C HUBER      RELEASE                                                  16:33:38
                    CASE STAT: CS    CNT STAT: CS    COUNT   :  1 OF 1
X-NUMBER : X00351619 COURT CASE NO.: PB032910_____  COUNT NO.: 1__
NAME: SANDOVAL           ALEXANDRO                   PAROLE: _____
NAME KNOWN TO COURT : SANDOVAL          ALEXANDRO
CHARGE CODE : O PC 3451(A)
DESCRIPTION : POST-RELEASE COMMUNITY SUPERVISION (PRCS)
COURT      : P PRL BRD    JUDGE :
================================================================================
ACT ORDER DATE REV DT CODE CJ-CDE RECOM   34 CONDITIONS OF PROBATION

_   06/23/2015           X84     O    PRCS: CDC1515 - NOT REFUSE TO SIGN
_   06/23/2015           X86     O    PRCS: NARCOTIC REGISTRATION
_   06/23/2015           X88     O    PRCS: COOPERATE IN PLAN FOR SUBS ABUSE
_   06/23/2015           X89     O    PRCS: COOPERATE EMPLOYMENT/TRAINING
_   06/23/2015           X99     O    COUNTY PAROLE: OTHER
_   06/23/2015           X99     O    COUNTY PAROLE: OTHER
_   06/23/2015           X99     O    COUNTY PAROLE: OTHER
_   06/23/2015           X99     O    COUNTY PAROLE: OTHER
VALID ACTIONS: (I)                                          JUMP: ____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      HELP  TBLS  RTRN  CNCL  CNVD        UP    DOWN  FIND  CT-1  CT+1  CNDD
```

CH 001096

```
MCND          POST          APS - MAINTAIN CONDITION DATA                  10/01/18
C HUBER       RELEASE                                                      16:34:29
X-NUMBER :  X00351619  COURT CASE NO.:  PB032910          COUNT NO. :  1
NAME    :  SANDOVAL           ALEXANDRO                   PAROLE    :


ACT ORDER DATE                     34 CONDITIONS OF PROBATION
  _  06/23/2015       OBEY ALL LAWS_____
     CJ-CDE X99
```

```
REV DATE
CODE
CJ-CODE
```

```
VALID ACTIONS: ()          YOU ARE WORKING ON ORDERED CONDITIONS      JUMP: ____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
       HELP  TBLS  RTRN  CNCL  CNCD  CNVD               FIND  CN-1  CN+1  CNDD
```

```
(A) LT-1 - PASSPORT                  Monday, October 01, 2018, 16:34:32 PM
```

CH 001097

```
MCND        POST        APS - MAINTAIN CONDITION DATA              10/01/18
C HUBER     RELEASE                                               16:35:35
X-NUMBER :  X00351619  COURT CASE NO.:  PB032910        COUNT NO. :  1
NAME    :  SANDOVAL            ALEXANDRO              PAROLE    :

ACT ORDER DATE                    34 CONDITIONS OF PROBATION
 _  06/23/2015      DO NOT BE WITHIN 100 YARDS OF ANY PUBLIC PLACE, OR IN_____
    CJ-CDE X99      ANY VEHICLE, WHERE YOU KNOW ILLEGAL CONTROLLED_____
                    SUBSTANCES OR ILLEGAL WEAPONS ARE PRESENT, OR WHERE_____
                    YOU KNOW THE VEHICLE IS STOLEN OR BEING OPERATED_____
                    WITHOUT THE OWNER'S CONSENT._____


REV DATE
CODE
CJ-CODE



VALID ACTIONS: ()        YOU ARE WORKING ON ORDERED CONDITIONS     JUMP: ____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
        HELP   TBLS  RTRN  CNCL  CNCD  CNVD            FIND  CN-1  CN+1  CNDD
```

CH 001098

```
MCND        POST        APS - MAINTAIN CONDITION DATA              10/01/18
C HUBER      RELEASE                                              16:35:45
X-NUMBER :  X00351619  COURT CASE NO.:  PB032910       COUNT NO. :  1
NAME    :  SANDOVAL          ALEXANDRO             PAROLE   :

ACT ORDER DATE                     34 CONDITIONS OF PROBATION
  _  06/23/2015      CONTINUE W/X86_____
     CJ-CDE X99      CARRY PROOF OF REGISTRATION AT ALL TIMES AND DISPLAY_____
                     REGISTRATION TO ANY PEACE OFFICER UPON REQUEST._____




REV DATE
CODE
CJ-CODE



  VALID ACTIONS: ()        YOU ARE WORKING ON ORDERED CONDITIONS     JUMP: ____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
       HELP  TBLS  RTRN  CNCL  CNCD  CNVD              FIND  CN-1  CN+1  CNDD
```

CH 001099

```
MCND        POST        APS - MAINTAIN CONDITION DATA              10/01/18
C HUBER      RELEASE                                               16:35:53
X-NUMBER :  X00351619  COURT CASE NO.:  PB032910       COUNT NO. :  1
NAME     :  SANDOVAL            ALEXANDRO             PAROLE    :

ACT ORDER DATE                    34 CONDITIONS OF PROBATION
  _   06/23/2015      DO NOT DRIVE A MOTOR VEHICLE UNLESS LAWFULLY LICENSED_____
      CJ-CDE X99      AND INSURED._____




REV DATE
CODE
CJ-CODE



  VALID ACTIONS: ()        YOU ARE WORKING ON ORDERED CONDITIONS      JUMP: ____
  Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
        HELP  TBLS  RTRN  CNCL  CNCD  CNVD               FIND  CN-1  CN+1  CNDD
```

CH 001100

```
MCND        POST       APS - MAINTAIN CONDITION DATA              10/01/18
C HUBER     RELEASE                                               16:36:00
X-NUMBER :  X00351619  COURT CASE NO.:  PB032910       COUNT NO. :  1
NAME    :   SANDOVAL        ALEXANDRO               PAROLE    :

ACT ORDER DATE              34 CONDITIONS OF PROBATION
 _  06/23/2015        DO NOT OWN, POSSESS, OR WEAR ANY CRIMINAL STREET GANG_____
    CJ-CDE X99        PARAPHERNALIA, OR EXHIBIT ANY INDICIA OF CRIMINAL STR-_____
                      EET GANG AFFILIATION, INCLUDING, BUT NOT LIMITED TO,_____
                      DRESSING IN, DISPLAYING OR WEARING ANY CLOTHING, "COLO_____
                      S" OF OTHER INSIGNIA ASSOCIATED WITH ANY STREET GANG,_____
                      OR MAKING, DISPLAYING,USING OF "FLASHING" ANY HAND SIG_____
                      NS OR SIGNALS ASSOCIATED WITH ANY CRIMINAL GANG.(CONT)_____

REV DATE
CODE
CJ-CODE



VALID ACTIONS: ()       YOU ARE WORKING ON ORDERED CONDITIONS     JUMP: ____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
       HELP  TBLS  RTRN  CNCL  CNCD  CNVD                FIND  CN-1  CN+1  CNDD
```

```
MCND        POST        APS - MAINTAIN CONDITION DATA                10/01/18
C HUBER      RELEASE                                                 16:36:06
X-NUMBER :  X00351619  COURT CASE NO.:  PB032910        COUNT NO. :  1
NAME    :  SANDOVAL            ALEXANDRO                 PAROLE   :

ACT ORDER DATE                        34 CONDITIONS OF PROBATION
  _   06/23/2015      (CONT) OBEY ANY GANG INJUNCTION THAT APPLIES TO YOU.___.____
      CJ-CDE X99




REV DATE
CODE
CJ-CODE




 VALID ACTIONS: ()        YOU ARE WORKING ON ORDERED CONDITIONS    JUMP: ____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     HELP  TBLS  RTRN  CNCL  CNCD  CNVD                FIND  CN-1  CN+1  CNDD
5993I LAST CONDITION OF COUNT REACHED
```

CH 001102

EXHIBIT I

ATTN: LOS ANGELES COUNTY PROBATION DEPARTMENT

SUBJECT: RESIDENCE VERIFICATION

DATE _____

I UNDERSTAND THAT Alejandro Sandoval , IS CURRENTLY
                    Supervised persons name (print)
UNDER THE SUPERVISION OF THE LOS ANGELES COUNTY PROBATION DEPARTMENT AND
IS ASSIGNED THE FOLLOWING NUMBER:

x.351619
   Probation x-number


Alejandro Sandoval          IS CURRENTLY RESIDING AT MY
Supervised persons name (print)
RESIDENCE AND WILL CONTINUE TO RESIDE HERE FOR THE IMMEDIATE NEAR FUTURE
(OR) WILL BE ALLOWED TO RESIDE AT MY RESIDENCE, PENDING APPROVAL BY THE
GOVERNMENT AGENCY THAT HAS JURISDICTION OF THE AREA WHERE MY RESIDENCE IS
LOCATED.
"Guest house" At 4851 Saturn St  L.A. 90019


I AM AWARE THAT THE Alejandro Sandoval     IS SUBJECT TO
                    Supervised persons name (print)
"SEARCH & SEIZURE" AND THAT MY RESIDENCE MAY BE SEARCHED (AT ANY HOUR OF
THE DAY OR NIGHT) BY ANY PROBATION OFFICER (OR) PEACE OFFICER, WITH OR
WITHOUT A WARRANT.

MY ADDRESS AND PHONE NUMBER ARE LISTED BELOW:

Guest house at the end of Drive way
4851 Saturn St  LA.  90019
213-248-4059

PRINT LEGIBLY

SINCERELY,

_Antonio_____
        Signature

Antonio Oraz
     Printed name

"Please Note"
Very Important

my elderly father resides
In the main house
and has health issues.
the guest house is not
connected to the main
house. my consent is
only to Guest House.
Thank you.

*** VERY IMPORTANT*** I HAVE INCLUDED A COPY OF MY RECENT UTILITY BILL
(GAS, WATER, ELECTRIC or CABLE) OR (RENTAL CONTRACT) THAT INCLUDES MY NAME
AND ADDRESS. PHONE BILLS WILL NOT BE ACCEPTED AS PROOF OF RESIDENCE.

EXHIBIT J

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
**VEHICLE REPORT**
CHP 180 (Rev. 12-06) OPI 062

NOTE: CHP 180 IS FURNISHED TO ALL PEACE OFFICERS BY THE CALIFORNIA HIGHWAY PATROL

| REPORTING DEPARTMENT | | LOCATION CODE | DATE / TIME OF REPORT | NOTICE OF STORED VEHICLE DELIVERED PERSONALLY ☐ | FILE NO. |
|---|---|---|---|---|---|
| Torrance PD | | 1972 | 3/16·/90 | | 160013801 |

| LOCATION TOWED / STOLEN FR | | ODOMETER READING | VIN CLEAR IN SVS? ☐ YES ☐ NO | DATE / TIME DISPATCH NOTIFIED | LOG NO. |
|---|---|---|---|---|---|
| Sepulveda / Western | | 28903 | LIC. CLEAR IN SVS? ☑ YES ☐ NO | 3/10/16 · 1854 | |

| YEAR | MAKE | MODEL | BODY TYPE | COLOR | LICENSE NO. | ☐ ONE | MONTH / YEAR | STATE |
|---|---|---|---|---|---|---|---|---|
| 15 | Chev | Cruz | 4 DR | Black | 7LTY822 | ☐ TWO | 8 16 | CA |

| VEHICLE IDENTIFICATION NO. | ENGINE NO. | VALUATION BY ☑ OFFICER ☐ OWNER |
|---|---|---|
| 1 G 1 P C 5 S B 2 F 7 2 9 3 2 3 3 | | ☐ 0-300 ☐ 301-4000 ☑ 4001+ ☐ $ |

REGISTERED OWNER    ☑ SAME AS R/O    LEGAL OWNER

ALEJANDRO SANDOVAL
4851 SATURN ST.
LOS ANGELES, CA 90019

☐ STORED    ☐ IMPOUNDED    ☐ RELEASED    ☐ RECOVERED - VEHICLE / COMPONENT

| TOWING / STORAGE CONCERN (NAME, ADDRESS, PHONE) | STORAGE AUTHORITY / REASON |
|---|---|
| VAN LINGEN TOW, 2755 LOMERA BLVD, 310-370-4555 | 22651 (C)(D) CVC |

| TOWED TO / STORED AT | AIRBAG? | | | | DRIVEABLE? | | | VIN SWITCHED? |
|---|---|---|---|---|---|---|---|---|
| SAME | ☑ YES ☐ NO | ☐ 1 | ☑ 2 | | ☑ YES ☐ NO | ☐ JUNK ☐ UNK | | YES ☑ NO |

| CONDITION | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | TIRES / WHEELS | CONDITION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WRECKED | | ☑ | SEAT (FRONT) | ☑ | | REGISTRATION | | ☑ | CAMPER | | ☑ | LEFT FRONT | FAIR |
| BURNED HULK per 431(c) VC | | | SEAT (REAR) | ☑ | | ALT. / GENERATOR | ☑ | | VESSEL AS LOAD | | ☑ | RIGHT FRONT | |
| VANDALIZED | | | RADIO | ☑ | | BATTERY | ☑ | | FIREARMS | | ☑ | LEFT REAR | |
| ENG. / TRANS. STRIP | | | TAPE DECK | | ☑ | DIFFERENTIAL | ☑ | | OTHER | | ☑ | RIGHT REAR | BAD |
| MISC. PARTS STRIP | | | TAPES | | ☑ | TRANSMISSION | ☑ | | | | | SPARE | |
| BODY METAL STRIP | | | OTHER RADIO | | ☑ | AUTOMATIC | ☑ | | | | | HUB CAPS | |
| SURGICAL STRIP per 431(b) VC | | | IGNITION KEY | ☑ | | MANUAL | | | | | | SPECIAL WHEELS | |

| RELEASE VEHICLE TO: | ☑ R/O OR AGENT | ☐ AGENCY HOLD | ☐ 22850.3 VC | GARAGE PRINCIPAL / AGENT STORING VEHICLE (SIGNATURE) | DATE / TIME |
|---|---|---|---|---|---|
| | | | | Campre 9622 | 3·4·16 |

| NAME OF PERSON / AGENCY AUTHORIZING RELEASE | I.D. NO. | DATE | CERTIFICATION: I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT I AM LEGALLY AUTHORIZED AND ENTITLED TO TAKE POSSESSION OF THE ABOVE DESCRIBED VEHICLE. |
|---|---|---|---|
| | | | |

SIGNATURE OF PERSON AUTHORIZING RELEASE          SIGNATURE OF PERSON TAKING POSSESSION

☐ STOLEN VEHICLE / COMPONENT    ☐ EMBEZZLED VEHICLE    ☐ PLATE(S) REPORT

| DATE / TIME OF OCCURRENCE | DATE / TIME REPORTED | NAME OF REPORTING PARTY (R/P) | DRIVER LICENSE NO. / STATE |
|---|---|---|---|
| | | | |

| LAST DRIVER OF VEHICLE | DATE / TIME | ADDRESS OF R/P | TELEPHONE OF R/P ( ) |
|---|---|---|---|
| | | | |

I CERTIFY OR DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

SIGNATURE OF PERSON MAKING REPORT

**REMARKS**
[LIST PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTS]

| DRIVER'S NAME | ARRESTED / SECTION? | REPORTED BY | CARGO / TYPE? | VALUE $ |
|---|---|---|---|---|
| ALEJANDRO SANDOVAL | ☑ YES ☐ NO H37DH/11 | WALDROP 15471 | ☐ YES ☑ NO | ☐ BILL OF LADING ATTACHED |

DRIVER ARRESTED FOR NARCOTICS SALES



FRONT          LEFT SIDE          RIGHT SIDE          REAR          TOP

| SIGNATURE OF OFFICER TAKING REPORT | I.D. NO. | SUPER | REQUIRED NOTICES SENT TO REGISTERED LEGAL OWNERS PER 22852 VC? | DATE NOTIFIED |
|---|---|---|---|---|
| R. WALDROP | 15471 | | ☑ YES ☐ NO | 10/16 |

OSP 06 99591

EXHIBIT K



## COUNTY OF LOS ANGELES
## PROBATION DEPARTMENT

WEST LOS ANGELES AREA OFFICE

11151 MISSOURI AVE
LOS ANGELES, CA 90025
(424) 832-8000

**CAL REMINGTON**
CHIEF PROBATION OFFICR



Post Released Supervised Person (PSP): SANDOVAL, ALEJANDRO
Your **MONTHLY** office conference with your Deputy Probation Officer of record to discuss your com
with the POSTRELEASE COMMUNITY SUPERVISION terms and conditions set forth upon your releas
CDRC are as follows:

**APPOINTMENT DATE/TIME:**          OCTOBER 03, 2016 AT  11:00 AM

**LOCATION:**                       West L.A. OFFICE

**PROBATION OFFICER:**              DPO YEPEZ

**TELEPHONE NUMBER:**               OFFICE (424)832-8001 CELL (310) 803-3491

PLEASE BRING THE FOLLOWING ON YOUR NEXT APPOINTMENT:

Failure to report as instructed by the assigned Deputy Probation Officer (noted above) is a violatic
the terms and conditions of your release and participation in this program and will result in a warr

NO CANCELLATIONS

Probationer's Signature                    Date              X – Number

EXHIBIT L

```
PAGE 01  03/11/16  00:50:49 T6DQ    INT REQUESTED BY TERMINAL TCD6
TO: TCD6  FROM: CLETS              03/11/16  00:49:57          PAGE 017
4TOR0TCD6B.IR
CA0197200  RE: QVC.CA0197200.NAM/SANDOVAL,ALEJANDRO.SEX/M.DOB/19
MATCH MADE ON NAM/SANDOVAL,ALEJANDRO
NAME FIELD SEARCH REVEALS:
SRF HIT # 001

HIT MADE ON AKA/SANDOVAL,ALEJANDRO
** NOT A WARRANT** PRCS COMMUNITY SUPERVISION RECORD **NOT A WARRANT **
** DO NOT ARREST OR DETAIN BASED SOLELY ON THIS RESPONSE **
ENT/1
NAM/SANDOVAL,ALEXANDRO SEX/M DOB/19720621 RAC/H HGT/509
WGT/220 EYE/BRO HAI/BRO OLN/A5632508.CA SOC/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
CII/A09343216 OCA/X00351619
RESIDENCE COUNTY/LOS ANGELES CITY/LOS ANGELES
        *******PRCS COMMUNITY SUPERVISION INFORMATION********
PRIMARY OFFENSE/NARCOTICS
BEGIN SUPERVISION/20150623 DISCHARGE DATE/20180807
AKA/LIL,ALEX                  SANDOVAL,ALEIANDRO
    SANDOVAL,ALEJANDRO        SANDOVAL,ALEX
    SANDOVAL,ALEXANDRO HUERTA
AGENCY/LA CO PROB-DOWNEY ORI/CA019183G
CONTACT/YEPEZ,CARMEN UNIT/SANTA MONICA
PHONE/310 260-3525
```

TPD 001282

EXHIBIT M



# COUNTY OF LOS ANGELES
# PROBATION DEPARTMENT
9150 EAST IMPERIAL HIGHWAY -- DOWNEY, CALIFORNIA 90242
(562) 940-2501



**TERRI L. MCDONALD**
Chief Probation Officer

Date: MARCH 9, 2017

To:   ALEXANDRO SANDOVAL
      PSP's First and Last Name

X-Number: X-351619

From: KENLEY WILLIAMS
      DPO's First and Last Name

PRCS Case No.: PB032910

**RE:  Notification Termination from Postrelease Supervision; Twelve (12) Months with No Viola**
**Result in a Custodial Sanction**

This letter is to inform you that postrelease supervision is terminated pursuant to California Penal Co
3456(a) (3). As indicated in that statute, "Any person who has been on postrelease supervision co
for one year with no violations of his or her conditions of postrelease supervision that results in a
sanction shall be discharged from supervision within 30 days."

The Los Angeles County Probation Department records indicate that you are eligible for terminati
postrelease supervision on 03/09/2017. From this date forward, you are no longer under the supervi
Los Angeles County Probation Department.

This applies to PRCS Case No. PB032910 only. This termination does not apply to any other active
supervision case(s) you may be subject to by Federal, State, or local courts or jurisdictions. You a
instructed to maintain compliance with supervision conditions in those matters to avoid possible sa
revocations of community supervision.

Please retain this letter for your records and as proof that your postrelease supervision was termin
the date indicated above. The State of California Department of Corrections and Rehabilitation has
that your case will remain active in their records for a period of three years and local law enforceme
you're your post release supervision as remaining active.

_____          _____          5/9/1
PSP Signature                   DPO  Signature                    Date

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
**LOCAL LAW ENFORCEMENT AND OTHER POLICE AGENCIES:**

This letter is provided to the individual named above as an acknowledgment that the he or she was
from postrelease supervision on the date indicated above. If you have any questions regarding t
letter, or would like verification, please contact the Probation Information Center at 1(866) 931-2222.

EXHIBIT N

STATE OF CALIFORNIA
CDC 102 (5/92)

**RELEASE STATEMENT**

DOB 06/21/1972

STATEMENT NO. C.M.P. 8·8·15

15·003

| RELEASE DATE | RELEASING INSTITUTION | CDC NUMBER | RELEASEE'S NAME |
|---|---|---|---|
| 05/15 2015 | CCC | H91815 | Sandoval, Alejandro |

| PAROLE REGION | DESTINATION AND FORWARDING ADDRESS |
|---|---|
| PROS/LA | 236 East 58th Street, Los Angeles 90011 |

- [x] Discharge
- [ ] Parole
- [ ] NTCU
- [ ] STRU
- [ ] WFP
- [ ] To go to Hold
- [ ] To go to Depart
- [ ] Other

## 1. CLOTHING AUTHORIZATION

**MALE**                          Category _____

| **Dress Clothing** | **Work Clothing** |
|---|---|
| ___ Slacks | ___ Khakis |
| ___ Sport Coat or Jacket | ___ Whites |
| ___ Dress Shirt | ___ Work Shoes (pair) |
| ___ Sport Shirt | ___ Trousers |
| ___ Handkerchief | ___ Shirts |
| ___ Tie | ___ Work Socks |
| ___ Belt | **Special Clothing** |
| ___ Suspenders | ___ Overalls |
| ___ Shorts | ___ Work Gloves |
| ___ Undershirt | ___ Heavy Jacket |
| ___ Dress Socks | ___ Hat |
| ___ Dress Shoes (pair) | ___ Overcoat or Topcoat |
| ___ Raincoat (plastic) | ___ Zipper Bag |

**FEMALE**

| **Dress Clothing** | |
|---|---|
| ___ Coat or Lined Suit | ___ Hose |
| ___ Cotton Dress | ___ Briefs |
| ___ Tailored Dress | ___ Bras |
| ___ Skirt and Blouse | ___ Slips |
| ___ Two-Piece Dress | ___ Duster |
| ___ Purse | ___ Gown |
| ___ Suitcase | ___ Hat |
| | ___ Shoes (pair) |

**Clothing Authorization Cost $**

## 2. RESOURCES AND DISTRIBUTION

**A. Personal Resources**
Check No. 98-760860      $ 13,421.86

Cash ........................      $ _____

Bonds and Securities ..........      $ _____

Total Personal Resources .........      $ _____

**B. State Allowance** ...................      $ 200 —

Less Clothing Cost ...............      $ _____

Less Advance to Temporary Release
Check No. BFFD 929932      $ 200.00

Cash ........................      $ _____

**TOTAL STATE REIMBURSEMENT**      $ 13,621.86
(CASH AND CHECKS)

*I hereby acknowledge receipt of the funds
and clothing in items #1 & 2.*

| RELEASEE'S SIGNATURE | DATE |
|---|---|
| *[signature]* | 8·6·15 |

| WITNESS SIGNATURE | DATE |
|---|---|
| S. Chanelle | 5/5/15 |

**APPROVED**

| WARDEN OR REPRESENTATIVE | DATE |
|---|---|
| *[signature]* | 6/23/15 |

I [ ] do [x] do not authorize the Warden to donate to the Inmate Welfare fund any money in the amount of $0.99 or less which might accrue to my trust account after my release.

| RELEASEE'S SIGNATURE | DATE |
|---|---|
| *[signature]* | 8·6·15 |

**A. & B. TOTAL CASH DISTRIBUTED**
$ 200.00

DISTRIBUTION: (1) CONTROLLER—(ORIGINAL) (2) ACCOUNTING (5) TRUST (6) CASHIER
(3) C-FILE (6) PRCS DIV. (7) CLOTHING (8) RELEASEE

EXHIBIT O









TPD 001386